Gretchen SMITH and Patricia
Baumbardner, Plaintiffs,

v.

GENTIVA HEALTH SERVICES (USA)
INC., et al, Defendants.

No. CIV. 02–73209.

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 23, 2003.

Darwin D. Dudley, Lansing, MI, for Plaintiffs.

Joseph J. Shannon, III, Detroit, MI, Barry J. Armstrong, Melinda M. Renshaw, Atlanta, GA, for Defendants.

### OPINION AND ORDER

FEIKENS, District Judge.

Plaintiffs, both nurses, bring suit against their former employer, referred to herein as Gentiva. Plaintiffs allege they were constructively discharged as retaliation for reporting a possible Medicaid violation and bring their claims under the Michigan Whistleblower's Act. M.C.L. § 15.361 et seq. Defendants move for summary judgment and plaintiffs move for partial summary judgment.

### I. FACTUAL BACKGROUND

Plaintiffs Georgia Smith and Pam Baumgardner allege that on or about Mar. 5, 2002, they were ordered by their immediate supervisor, Bette Dejanovich, to alter patient medical care records, which they believed was a violation of the law. On Mar. 10 or 11, 2002, plaintiff Smith called Gentiva's corporate compliance hotline, alleging that she had been asked to change

information on a patient's chart. (Br. in Support of Defs.' Mt. for Summ. J., Ex. E (G. Smith Dep. 34).) On or about Mar. 12, 2002, plaintiff Baumgardner called the hotline and alleged that she had been asked to add additional information to the same patient's medical chart. (Defs. Mt. For Summ. J., 6.) Corporate compliance found no violations. (*Id.*)

Plaintiff Smith says that retaliation for these reports began in early April by, among other things, a reduction in her assigned patient visits. (G. Smith Dep. 30.) Plaintiff Smith then applied for a position with a new company on April 17, 2002. (Br. in Support of Defs.' Mt. for Summ. J., Ex. K.) The record does not give a date on which Smith was offered that job and accepted, but on May 7, 2002, the company sent a letter to plaintiff Smith confirming that she had accepted their offer of employment. (Defs.' Mt. For Summ. J., Ex. L.) On April 30, 2002, approximately a week before plaintiff Smith received the letter confirming her acceptance of new employment, both plaintiffs contacted a investigator with the Michigan Department of Consumer and Industry Services (CIS) about the alleged request to alter a patient's chart. (Br. in Opposition to Defs.' Second Mt. for Summ. J., Ex. A; G. Smith Dep. 37.)

Ms. Dejanovich of Gentiva stated she first learned of the complaint to the State's CIS on May 11, 2002.[1] (Defs.' Br. in Supp. of Defs.' Mot. for Summ. J., 2, referencing Ex. Q., Dejanovich declaration ¶ 22.) Plaintiffs resigned their employment with Gentiva on May 15 and 16, 2002, and assert they did so because their work assignments had been sharply reduced in retaliation for their reports. (Br. in Opposition to Defs.' Second Mt. for Summ. J., Ex. C.) Plaintiff Smith started her new position on May 20, 2002. (Defs.' Mt. for Summ. J., Ex. P.)

## II. ANALYSIS

### A. Motion for Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must view the evidence and any in-

---

1. Without citation to any documents, plaintiffs' brief asserts that both plaintiffs can testify Dejanovich received notice before May 11. (Br. in Opposition to Defs. Second Mt. for Summ. J., 10.) However, plaintiff Smith could offer no date on which she told anyone at Gentiva about the call to Medicare. (G. Smith Dep. 38–39.) Therefore, plaintiff Smith does not offer a competing date and create a question of material fact as to the date defendants learned of the CIS complaint.

Plaintiffs also assert, without citation, that on May 1, 2002 plaintiff Baumgardner informed an employee of Gentiva that plaintiffs had complained to the State. (Br. in Opposition to Defs.' Second Mt. for Summ. J, 11.) However, in her sworn deposition, when asked, "Did you tell anyone else that you had

these conversations with Holly and Barbara Banks from Medicare?" Baumgardner responded, "The only person I talked to was Gretchen [Smith] about it." (Br. in Support of Defs.' Mt. for Summ. J., Ex. D, 93.) It is improper for a witness to contradict deposition testimony by an affidavit or declaration for the purpose of avoiding summary judgment. *See, e.g., Reid v. Sears, Roebuck and Co.*, 790 F.2d 453, 460 (6th Cir.1986); *Downer v. Detroit Receiving Hosp.*, 191 Mich.App. 232, 477 N.W.2d 146 (1991). Since the sworn statement of Ms. Baumgardner in her deposition contradicts her unsworn declaration in the plaintiffs' brief, this Court will disregard Baumgardner's attempt to create a dispute regarding the May 11 date.

ferences drawn from the evidence in a light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted), *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir.2001). The burden on the moving party is satisfied where there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

**B. Michigan Whistleblowers' Act Standard**

■ In order to make a prima facie case under § 2 of the Michigan Whistleblower's Act, the plaintiff must show that:

"(1) he was engaged in protected activity as defined by the act, (2) the defendant discharged him, and (3) a causal connection exists between the protected activity and the discharge." *Chandler v. Dowell Schlumberger Inc.*, 456 Mich. 395, 572 N.W.2d 210 at 212 (1998).

■ The first prong can be satisfied in two ways applicable to this case: either by reporting or by "being about to report" a suspected violation of law to a public body. *Id.*, citing M.C.L. § 15.362. The suspected violation of the law is judged on a subjectively reasonable standard: the employee must have been acting in good faith and been subjectively reasonable in the belief that the conduct was a violation of the law. *Melchi v. Burns Int'l Security Services, Inc.*, 597 F.Supp. 575 (E.D.Mich. 1984). The plaintiff bears the burden of establishing with clear and convincing evidence that a question of fact exists regarding whether he or she was "about to" report violations to a public body. *Shallal v. Catholic Soc. Serv. of Wayne County*, 455 Mich. 604, 566 N.W.2d 571 (1997); *Koller v. Pontiac Osteopathic Hosp.*, 2002 WL 1040339 (Mich.App.2002), *leave to appeal denied*, 661 N.W.2d 232 (Table) (Mich. 2003).

■■ The second prong may be satisfied by a "constructive discharge," which is alleged in this case. *Jacobson v. Parda Fed. Credit Union*, 457 Mich. 318, 577 N.W.2d 881 (1998). This standard is one of objective reasonableness: "A constructive discharge occurs only where an employer or its agent's conduct is so severe that a reasonable person in the employee's place would feel compelled to resign." *Id.*; *Champion v. Nationwide Sec., Inc.*, 450 Mich. 702, 545 N.W.2d 596 at 600 (1996), *r'hng denied*, 451 Mich. 1240, 549 N.W.2d 579 (1996).

■ In order to satisfy the third prong of "causation," the employer must receive some form of objective notice of the report or the whistleblower's intent to report before the retaliatory activity occurs. *Kaufman & Payton, P.C. v. Nikkila*, 200 Mich. App. 250, 503 N.W.2d 728 (1993).

■ Once a prima facie case of retaliation has been established, the burden shifts to the employer, who must offer evidence demonstrating that the discharge was for a legitimate reason; if the defendant meets its burden, the plaintiff can prevail only if he or she can demonstrate that the reason given is a mere pretext. *Eckstein v. Kuhn*, 160 Mich.App. 240, 408 N.W.2d 131 (1987); *Wolcott v. Champion Intern. Corp.*, 691 F.Supp. 1052 (W.D.Mich.1987).

**C. Prima Facie Case Prong I—Whether Plaintiffs Engaged in Protected Activity**

■ The first query must be whether or not there is a material issue as to whether plaintiffs engaged in "protected activity." Plaintiffs' complaint to the State's CIS must be both made in good faith and have a subjectively reasonable basis to qualify for protection.

Both Smith and Baumgardner say that Dejanovich asked them to make alterations to a medical chart. (G. Smith Dep. 17–22;

Baumgardner Dep. 24–5.) Dejanovich denies asking either one to make alterations to the chart, saying she only asked that an illegible page be rewritten. (Dejanovich Dep. 40–2.) These contradictory accounts create an issue of material fact as to whether the request took place, and therefore whether plaintiffs made their complaint in good faith.

Defendants assert plaintiffs' did not have a subjectively reasonable basis for their complaint because the request made could not reasonably be interpreted as a request to perform an illegal act. (Defs.' Br. in Opposition to Pls.' Mt. for Partial Summ. J., 2, 6–7.) Intentionally placing misleading or inaccurate information in a patient's medical record is a felony under Michigan law. M.C.L. 750.492a. That law also provides that changes to charts should be made "in a manner that reasonably discloses that the supplementation or correction was performed and that does not conceal or alter prior entries." M.C.L. 750.492a(3)(b). Given this law, I find a reasonable perception of illegality is created when an individual is asked to alter a patient's chart without such a notation.

Because a dispute over a material fact is present, summary judgment must be denied on this prong of the prima facie case.

### D. Prima Facie Case Prong II–Whether Plaintiffs Were Constructively Discharged

■ Plaintiffs, who are not salaried, allege Gentiva retaliated against them by drastically reducing their work assignments after they made complaints about their work assignments. (Br. in Opposition to Defs.' Second Mt. for Summ. J., 10; *Id.*, Ex. C; Baumgardner Dep. 94.), Objectively, a reasonable person in the employee's place would be compelled to resign if his or her hours were markedly reduced so that the job no longer provided a sufficient living. Therefore, since I find evidence of a significant reduction in hours can be evidence of constructive discharge, plaintiffs have offered evidence in support of their argument that they were constructively discharged.

Whether the alleged reductions took place is a matter in material dispute. The company's scheduler denies that work assignments were reduced after the plaintiffs complained to the State.[2] (Defs.' Mt. for Partial Summ. J., Ex. A at 30 (Lebel Dep.).) Because there is a question of material fact as to this issue, summary judgment cannot be granted for either party.

### E. Prima Facie Case Prong III—Whether Sufficient Causation Exists

Defendants argue that Ms. Dejanovich only received notice that the plaintiffs had made a complaint to the State on May 11, 2002, and therefore plaintiff is required to show the alleged "retaliation" for that report occurred on or after that date. (Defs.' Br. in Supp. of Mt. for Summ. J., 2,

2. To dispute the scheduler's account, plaintiff Georgia Smith offers the deposition of fellow Gentiva employee Amy Smith. Amy Smith said she had a conversation with the company's scheduler, Ms. Lebel, in which Ms. Lebel told her that she had been ordered by plaintiffs' supervisor, Bette Dejanovich, to reduce plaintiff Smith's hours. (No statement is made either way in relation to plaintiff Baumgardner). (Defs.' Mt. for Summ. J. Ex. C (Amy Smith Dep. 48).) Defendants challenge this statement as hearsay. F.R. of Evid. 801(d)(2)(D) makes an exception in the hearsay rule for statements by the party's employees concerning a matter within the scope of the employment. Ms. Lebel's statement comes within this exception because she was Gentiva's scheduler, and she made a statement about an order she had received regarding scheduling. Therefore, I may consider this statement in deciding these motions.

referencing Ex. Q (Dejanovich declaration.).) Plaintiffs have two arguments for bringing in evidence before May 11, 2002: first, that Gentiva was notified before that date, and second, that the "about to report" language of the statute allows them to introduce evidence prior to that date. As discussed in footnote 1, plaintiffs' evidence does not put the May 11, 2002 date in dispute. Therefore, I will only consider the "about to report" language here.

■■■■■ In order to successfully allege retaliation for being "about to report," a plaintiff must show, with clear and convincing evidence, that the employer had objective notice of the threat to make a complaint to the State. *Kaufman & Payton, P.C. v. Nikkila,* 200 Mich.App. 250, 257-8, 503 N.W.2d 728 (1993); *Koller v. Pontiac Osteopathic Hosp.,* 2002 WL 1040339 (Mich.App.2002), *leave to appeal denied,* 661 N.W.2d 232 (Table) (Mich. 2003). In *Nikkila,* the court found that an employer's subjective fear of retaliation was not sufficient to trigger the statute's "about to report" clause. 200 Mich.App. 250, 503 N.W.2d 728. Thus, even an employer is concerned that a call to an internal compliance hotline may eventually lead to a complaint against the State, this alone cannot satisfy the notice requirement. It is sufficient if a plaintiff threatens, either orally or in writing, to report her employer to the State.[3] *Shallal v. Catholic Soc. Serv. of Wayne County,* 455 Mich. 604, 616, 566 N.W.2d 571 (1997); *Koller, id.*

Here, although plaintiff Smith does allege that she told Gentiva about the Medicare complaint, she does not recall whether it was before or after the State's investigator came in response to the complaint, and cannot specify that this notification occurred before May 11, 2002. (Smith Depo. 45-6.) Therefore, even if Smith's complaint did trigger the "about to report" language, plaintiffs still fail to allege that the protection extends farther back in time than the protection from the notification of the report itself. Thus, given that the May 11, 2002 date is not called into material dispute under either the "report" or the "about to report" language of the statute, summary judgment is granted for defendants on the issue of when retaliation for the report to the State could begin.

Defendants argue that no retaliation took place from May 11th until the plaintiffs resigned, and therefore, ask the court to grant summary judgment on this issue. However, plaintiffs successfully allege retaliation after May 11, 2002.

■■■■ Plaintiff Baumgardner wrote in her letter of resignation that when she previously complained of receiving too little work, managers usually responded by increasing her workload, but that when she complained about having too little work on May 15, 2002, her workload was not increased. (Br. in Opposition to Defs.' Second Mt. for Summ. J., Ex. C.) Since plaintiff Baumgardner alleges a behavior change toward her (the further reduction of her workload) that occurred after Dejanovich learned of the complaint, she meets her burden of offering evidence of retaliation. Gentiva offers evidence in contradiction through Dejanovich's and Lebel's depositions. Therefore, there is a material issue of fact that precludes summary judgment on the third prong for Baumgardner.

---

**3.** A threat to report to an internal corporate compliance body or even such a report cannot trigger the protection of the "about to report" language of the statute, because the Whistleblower's Act does not apply if a plaintiff reports a violation "only to his employer, not to a public body." *Dudewicz v. Norris–Schmid, Inc.,* 443 Mich. 68, 503 N.W.2d 645 (1993), quoted by *Chandler v. Dowell Schlumberger Inc.,* 456 Mich. 395, 572 N.W.2d 210 at 214 (1998).

Similarly, plaintiff Smith asserts in her resignation letter dated May 16, 2002 that "since informing Medicare, I have even less work. In fact, I only have seven visits scheduled for this week." (Br. in Opposition to Defs.' Second Mt. for Summ. J., Ex. C.) Defendant disputes that this reduction was unexpected in the Dejanovich's declaration and Lebel's deposition. However, one additional legal issue must be considered before summary judgment on the prong can be decided in the matter of plaintiff Smith: whether her resignation can qualify as a constructive discharge.

 Causation requires retaliation for the complaint; if a plaintiff knows she is due to be let go, she is not protected if she then makes a complaint to the State. 455 Mich. 604 at 615, 566 N.W.2d 571. Here, plaintiff Smith accepted another offer of employment before defendants learned of her call to the State. If plaintiff Smith knew she would resign before May 11th, then this Court cannot find that her resignation was caused by Gentiva's retaliation for her complaint to the State.

Plaintiff Smith applied for a position with a new employer on April 17th, 2002, and began work for that employer five days after her resignation from Gentiva. (Br. in Support of Defs.' Mt. for Summ. J., Ex. K.; *Id.* Ex. L; Br. in Opposition to Defs.' Second Mt. for Summ. J., Ex. C.). Her April 17th application with her new employer indicated she sought full time work. (Br. in Support of Defs.' Mt. for Summ. J., Ex. K.) This evidence suggests that Smith's resignation was not prompted by retaliation beginning May 11, 2002.

However, there is conflicting evidence on this point. From her deposition, it is clear plaintiff Smith often held a job for another employer while she worked for defendants, which suggests she could have been planning to supplement rather than replace her employment at Gentiva. (G. Smith Dep. 14.) In addition, when asked in her deposition if she was applying for a "full-time position," Smith responded that "I was applying for any position," and says the opening in the location she preferred was not yet specified as part-time or full-time when she indicated that location was her top choice. (*Id.* 32–3.) Smith said she could not remember when she found out that position would be full-time. (*Id.*) Although the record of her employment interviews indicate that the position she was interviewed for was in fact full time, the box indicating the reviewer conveyed this information to the job applicant is not checked, unlike the box for nearly every other item. (Br. in Support of Defs.' Mt. for Summ. J., Ex. J.) The letter confirming her acceptance of the offer, dated May 7th, does not specify whether the position is full-time or part-time. (*Id.*, Ex. L.)

In deciding summary judgment motions, I am required to view evidence and any inferences drawn from the evidence in a light most favorable to the nonmoving party. Smith has given evidence that offers support to the inference that she was intending to supplement her Gentiva work rather than replace it entirely. Thus, although there is evidence that strongly supports the opposite inference, this burden requires me to find that there is a material dispute as to whether plaintiff Smith's resignation could have been in response to retaliation by Gentiva.

### F. Post-prima facie case analysis

 Finally, summary judgment must be denied because defendants meet their burden by offer a legitimate reason for the alleged retaliatory actions, and plaintiffs offer evidence to indicate that the reason given is pretextual.

Defendants offer three reasons for the schedule changes. In response to Baumgardner, Gentiva says she had asked to reduce her hours at the start of 2003. (Br.

in Support of Mt. for Summ. J., Ex. A(Lebel Declaration, 41).) In regard to plaintiff Smith, defendants says she had been considered a "new" RN for much of 2003, so she had received an unusually high number of starts and the May reduction in her schedule was to be expected. (*Id.*, Ex. Q (Dejanovich Declaration).) Finally, defendants also argue that Smith was scheduled to be on vacation much of the week of May 12th, so her scheduled visits were low for that reason. (Defs. Mt. for Summ. J., 8 (referencing G. Smith Dep. 49).) Therefore, defendant claims, no scheduling reductions were independently instituted by Gentiva.

Plaintiffs put forth evidence challenging these justifications. Baumgardner's letter of resignation says she asked for more work, not less, several times before resigning. (Br. in Opposition to Defs.' Second Mt. for Summ. J., Ex. C.) As for Smith, she had worked at Gentiva since October of 1994, and could only be considered a "new" employee because she had resigned in December 2001 and was rehired in January 2002. (G. Smith Dep. 12; Defs. Mt. for Summ. J., Ex. Q (Dejanovich declaration ¶¶ 19–21).) Plaintiff Smith says, therefore, that the reduction in her hours cannot be attributed to this status. Moreover, plaintiff Smith says she only had two visits scheduled for the Tuesday in dispute, and that this number was far below the number of visits she had previously been given the day before a vacation. (G. Smith Dep. 48–50.)

## III. Conclusion

Therefore, since all parties have met their burden, but because there is conflicting evidence on all points, summary judgment can not be granted for either side on the main case. However, on the issue of whether evidence of retaliation predating May 11, 2002 is relevant to this case, I grant summary judgment in favor of defendants and find such evidence is not relevant.

IT IS SO ORDERED.