**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0001n.06
Filed: January 3, 2006

**Case No. 04-2117**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| LARRY JONES, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| CITY OF ALLEN PARK and KENNETH | ) | DISTRICT OF MICHIGAN |
| DOBSON, Its Police Chief, In His Official | ) | |
| and Unofficial Capacities, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |
| _____ | ) | |

**BEFORE: KEITH, KENNEDY, and BATCHELDER, Circuit Judges.**

**ALICE M. BATCHELDER, Circuit Judge.** Plaintiff Larry Jones ("Jones") appeals the district court's grant of summary judgment in favor of defendants City of Allen Park ("Allen Park") and its police chief, Kenneth Dobson ("Dobson") (collectively "defendants"), on Jones's claims of violation of the Michigan Whistleblowers' Protection Act, MICH. COMP. LAWS § 15.361, *et seq.* ("WPA"), and 42 U.S.C. § 1983. Though the district court erred in dismissing the WPA claim against Dobson individually, we find that no genuine dispute of material fact remains for trial and the defendants are entitled to judgment as a matter of law on all claims. Accordingly, we AFFIRM the judgment of the district court.

**I. Factual and Procedural Background**

Jones has been a police officer with the City of Allen Park, Michigan, for approximately twenty years and was the supervisor of Officer Marcos Madrigal ("Madrigal"). Madrigal sued Dobson and the City of Allen Park for discrimination on the basis of race and national origin. Jones was called to give a deposition in the matter on April 24, 2002.

On February 3, 2002, a stabbing occurred on the front lawn of Dobson's residence involving Dobson's next-door neighbors. The next day, Dobson filed a disciplinary charge against Jones for failing to report the attempted homicide to Dobson, as Jones's job duties required. Dobson also charged Jones with neglecting to order interviews of witnesses and failing to call in a detective on the night of the incident, all of which caused the department to expend hundreds of extra hours of work to investigate the stabbing. Deputy Chief Dennis Gallow, after investigation, recommended that Jones be suspended for ten days for failure to notify the chief of a major incident in a timely manner as required by departmental policy #96-195. A "Chief's hearing" on the charge against Jones was held on April 19, 2002, and on April 22, Dobson sent Jones a letter advising that Jones would be suspended for five days. After Jones testified in the Madrigal matter on April 24, 2002, Dobson reduced Jones's suspension to a letter of reprimand that was placed in Jones's personnel file and removed one year later.

In addition to his deposition testimony, Jones was scheduled to testify on May 29, 2002, before the City Commission with regard to the Madrigal matter. On May 6 and May 15, Jones received letters from Dobson regarding an erroneous overtime payment made to Jones during a time when he was disabled and unable to work. On June 7, 2002, Jones agreed to reimburse the city $233.60 in overtime pay to which he was not entitled.

2

In June 2002, officers from the Michigan State Police and an FBI agent interviewed officers of the Allen Park Police Department in order to select officers to perform undercover work for the FBI. Dobson did not participate in the interview process. Although Jones interviewed for a position, he was not selected. Some time after January 31, 2003, the department engaged in tobacco stings, which allowed participating officers to collect overtime pay. Because these assignments were not posted as he claims they should have been, Jones is not certain exactly when they took place, but he believed that he was wrongfully excluded from these tobacco stings as retaliation for his participation in the Madrigal matter.

Finally, Jones believed that rumors were spread about him in the workplace as a result of his participation in the Madrigal matter, and that this constituted harassment. He wrote two memoranda to his supervisor on September 26, 2002 and January 8, 2003, complaining about this perceived harassment.

On February 27, 2003, Jones filed this 42 U.S.C. § 1983 and Michigan WPA action in the Wayne County Circuit Court and the defendants removed it to federal court. The complaint alleged that the defendants had retaliated against Jones for testifying in the Madrigal matter, and that these acts of retaliation violated the WPA and Jones's First and Fourteenth Amendment rights. Specifically, Jones claimed as retaliatory the defendants' imposing discipline for his failure to report the stabbing incident; requiring him to repay the overtime erroneously paid to him; denying him an undercover FBI position; permitting the circulation of harassing rumors about him; and denying him an opportunity to participate in the tobacco stings.

Jones filed a motion to reassign the case from District Judge Cleland to District Judge Tarnow because Judge Tarnow was handling cases that Jones viewed as companion cases to his,

3

including the suit Madrigal had filed against Allen Park and Dobson. Judge Cleland denied that motion, and the defendants moved for summary judgment. Jones responded, obtained leave to re-take the depositions of several witnesses for the purpose of opposing the defendants' motion, and filed a supplemental response. The district court then granted summary judgment to the defendants on all claims and denied Jones's motion for reconsideration. Jones filed this timely appeal.

## II. Standard of Review

We review a district court's grant of summary judgment de novo, using the same standard under Rule 56(c) used by the district court, *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (en banc), and we consider the record as it stood before the district court at the time of its ruling. *Niecko v. Emor Mktg. Co.*, 973 F.2d 1296, 1303 (6th Cir. 1992). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). We view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

To withstand summary judgment, the non-movant must present sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

4

### III. Summary Judgment on WPA Claims

#### A. Dismissal of Claims Against Dobson Individually

Jones sued both the Allen Park Police Department and Chief Dobson under the WPA. The district court dismissed the claims against Chief Dobson individually because it found that he did not meet the definition of an "employer" under the WPA. Section 1 of the WPA provides that an "employer" is "a person who has 1 or more employees. Employer includes an agent of an employer and the state or a political subdivision of the state." MICH. COMP. LAWS § 15.361.

Because the plain language of the statute explicitly includes an agent of an employer, we believe that the Michigan legislature expressly intended to allow suit against an agent of an employer when that agent violates the WPA. *See* MICH. COMP. LAWS § 15.361; *see also Phinney v. Perlmutter*, 564 N.W.2d 532 (Mich. Ct. App. 1997) (allowing a senior research associate at a university research institute to sue the institute's director under the WPA). We therefore conclude that the district court erred in determining that the WPA claims against Dobson individually should be dismissed.

However, as the district court recognized, Dobson is the only agent of the city named in the complaint, and the claims against Dobson individually and against the city are indistinguishable. Because we conclude below that no genuine issue of material fact remains for trial and the city is entitled to judgment on the WPA claim, the district court's error is harmless.

#### B. Claims Actionable

##### 1. Whether All of Jones's Claims are Barred by the Limitations Period

As a preliminary matter, the defendants argue that Jones's WPA claim is barred in its entirety because Jones's testimony in the Madrigal matter, the cause for the retaliation complained of, took

place more than ninety days before Jones filed his complaint.  This argument is meritless.  The WPA

makes each act of retaliation actionable and makes no reference to the complaint's being filed within

ninety days of the event giving rise to the retaliatory conduct.  *See* MICH. COMP. LAWS § 15.363(1)

(stating that a plaintiff may bring a civil action "within 90 days after the occurrence of the alleged

violation of this act," not within ninety days of the event giving rise to the violation of the act).

### 2.  Which Claims are Actionable

Section 3 of the WPA provides the limitations period applicable in WPA claims, stating: "[a]

person who alleges a violation of this act may bring a civil action for appropriate injunctive relief,

or actual damages, or both within 90 days after the occurrence of the alleged violation of this act."

MICH. COMP. LAWS § 15.363(1).  Jones argues that each of Dobson's allegedly retaliatory actions

was in some way motivated by Dobson's desire to keep Jones from testifying in the Madrigal matter

or his anger at Jones for testifying.  He argues that the actions are thus a part of a "continuing course

of conduct" that is actionable under the WPA and not single incidents that are each subject to the

90-day limitations period.

The district court found that the "continuing violations" doctrine applies to cases brought

under the WPA, citing *Sumner v. Goodyear Tire & Rubber Co.*, 398 N.W.2d 368 (Mich. 1986), but

that the doctrine did not apply in this case because there was no continuous policy of discrimination

that manifested itself in ways that would not "trigger an employee's awareness of and duty to assert

his rights."  Although we conclude that the district court correctly found that Michigan has adopted

the "continuing violation" doctrine with regard to the WPA, *see Phinney*, 564 N.W.2d at 551 (citing

*Sumner*), we think that the viability of that doctrine in Michigan has been called into doubt since the

6

district court entered its decision in this case. *See Garg v. Macomb Co. Cmty. Mental Health Servs.*, 696 N.W.2d 646, 656-59 (Mich. 2005) (overruling *Sumner*).

We need not decide whether Michigan courts are likely to continue to allow the continuing violations doctrine to be used to toll the statute of limitations on WPA claims because Jones has not made a showing sufficient to find a continuing violation. In evaluating whether such a continuing course of conduct exists, Michigan courts have considered: (1) whether the alleged acts involve the same type of discrimination; (2) whether the alleged acts are recurring or isolated; and (3) the degree of permanence of the act—i.e., whether it should indicate to the employee that he or she should assert his or her rights. *Phinney*, 564 N.W.2d at 552 (citing *Sumner*, 398 N.W.2d at 383).

Jones has failed to carry his burden of demonstrating that the theory applies in his case because, as the district court noted, "the allegations regarding his discipline charge and denial of promotion or overtime are isolated employment decisions having a degree of permanence that would trigger an employee's awareness of and duty to assert his rights." Jones argues that the five allegedly retaliatory actions are not isolated incidents because they were all motivated by the same animus. However, motivation pertains only to the first prong of the three-part analysis; Jones does not address whether the alleged acts of retaliation are of the same type of or have manifested themselves such that he should have been on notice that his rights had just been violated. Jones felt that he had been wronged in each of these circumstances and after each separate incident he voiced his frustrations about the allegedly poor treatment, but did not assert his rights by filing a timely civil action with regard to any of these acts of alleged retaliation.

Jones filed his complaint on February 27, 2003. Therefore, only those actions which occurred on or after November 28, 2003, fall within the 90-day limitations period. Jones does not

7

contest the defendants' assertion that the only claims falling within that time frame are those asserting that he was subjected to a hostile environment because of the circulation of rumors in the workplace and that he was denied tobacco sting overtime opportunities. Accordingly, only those claims are subject to analysis under the WPA.

The substantive provisions of the WPA are found in the Michigan Compiled Laws at § 15.362, which provides that:

> [a]n employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.

MICH. COMP. LAWS § 15.362. To establish a prima facie case of a violation of the WPA, a plaintiff must demonstrate that (1) he was engaged in a protected activity, (2) he was discharged from employment, threatened, or otherwise discriminated against, and (3) a causal connection exists between the protected activity and the discharge. *David v. ANA Television Network, Inc.*, 208 F.3d 213 (Table), 2000 WL 222575 (6th Cir. 2000) (citing *Shallal v. Catholic Soc. Servs. of Wayne Co.*, 566 N.W.2d 571, 574 (Mich. 1997)). Once a plaintiff makes out a prima facie case under the WPA, the burden shifts to the employer to show that the challenged action was taken for a legitimate reason. *Smith v. Gentiva Health Servs. (USA) Inc.*, 296 F. Supp. 2d 758, 762 (E.D. Mich. 2003) (citing *Eckstein v. Kuhn*, 408 N.W.2d 131 (Mich. Ct. App. 1987)). The burden of proof remains at all times on the plaintiff. *Id.*

8

Jones argues that "[t]here is no doubt that a jury could reasonably conclude that Plaintiff was harassed and retaliated against for his potential testimony and actual testimony in the Madrigal matters." Jones engaged in activity protected by the WPA when he provided deposition testimony in the Madrigal lawsuit and when he testified before the City Commission investigating the Madrigal matter. He therefore has met the first prong of his prima facie case. But review of the record makes it clear that as to each of the claimed acts of retaliation, he cannot establish at least one of the other prongs.

### a. Hostile Environment

The hostile environment claim alleges that unidentified persons were spreading rumors that Jones would be demoted or fired. Michigan courts look to the law regarding what constitutes an "adverse employment action" in civil rights actions to determine whether the plaintiff in a WPA claim has satisfied the second element of the prima facie case. *See, e.g., Heckmann v. Detroit Chief of Police*, 705 N.W.2d 689 (Mich. Ct. App. 2005). These cases hold that an adverse employment action is "an employment decision that is materially adverse in that it is more than a mere inconvenience or an alteration of job responsibilities." *Id.* at 697. Typically, this includes termination, demotion, diminished pay, a less distinguished title, a material loss of benefits, significantly diminished responsibilities, or other unique indices. *Id.* Isolated rumors being spread around the office from an unidentified source are not the kinds of actions that are actionable under the WPA, as such rumors are not the type of actions that rise to the level of an "adverse employment action" and are not attributable to the employer. Hence, Jones's hostile environment claim fails at the second prong.

### b. Lost Opportunity for Overtime on Tobacco Stings

9

The lost opportunity to sign up for overtime is a tangible employment action sufficient to satisfy the second prong of Jones's prima facie case. However, to show causation, Jones must show that his employer was on notice that he was participating in the protected activity and that his participation in the protected activity led to the adverse employment action. *Gentiva*, 296 F. Supp. 2d at 762; *Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977) (stating that, in retaliation cases, the question is whether the employer would have reached the same decision even if the plaintiff had not engaged in protected conduct).

Jones's evidence shows that the reason he was not aware of the overtime opportunities was because the person responsible (either an inspector in the detective bureau or the Chief) did not post the job. Jones put forth no evidence showing that the Chief purposely did not post it, that it was the Chief's decision not to do so, or that the motivation for not posting it was to deprive Jones of the ability to work overtime. The only pieces of evidence tending to show that the lack of a posting was motivated by the Chief's retaliatory motives are Jones's own deposition statements expressing his unsubstantiated opinion that retaliation was the cause. This is not sufficient to meet the causation element of the prima facie case.

## IV.  Summary Judgment on § 1983 Claim

### A.  Whether the WPA is Jones's Exclusive Remedy

Defendants argued in the district court and argue before us that the remedy set forth in the WPA is exclusive and encompasses all related claims, and thus precludes Jones's § 1983 claim. The district court disagreed, finding no merit to the argument that a federal statute protecting individuals' constitutional rights from being infringed by public actors could be pre-empted by a state statute. The defendants appeal this ruling, citing *Covell v. Spengler*, 366 N.W.2d 76, 80 (Mich. Ct. App.

10

1985), a case in which the court, addressing a situation nothing like the one presented here, happened to say that "the [WPA] is plaintiff's exclusive remedy"—the only language in the opinion to which defendants seem to pay attention.

Defendants point to no authority that would permit us, in light of the Supremacy Clause, *see* U.S. CONST. art. VI, cl.2, and in the absence of any indication that Congress intended state laws such as the Michigan WPA to supersede the right to bring a § 1983 action for violation of constitutional rights, to construe the WPA in the way defendants suggest. Furthermore, this circuit has on several occasions entertained without comment actions in which plaintiffs have brought WPA and First Amendment claims in the same suit based on the same underlying conduct. *See, e.g., Hopkins v. City of Midland*, 404 N.W.2d 744, 751-56 (Mich. Ct. App. 1987); *Feliz v. Taylor*, 49 Fed. Appx. 3, 4-5 (6th Cir. 2002); *Dalton v. Wayne County*, 202 F.3d 267 (Table), 1999 WL 1281719 (6th Cir. 1999); *Berbeula v. Richard*, 124 F.3d 196 (Table), 1997 WL 468337 (6th Cir. 1997). The district court correctly held that the WPA is not Jones's exclusive remedy.

**B. Whether Dobson and Allen Park Violated Jones's First Amendment Rights**

The § 1983 claim premised on a violation of Jones's First Amendment rights differs from the WPA claim because the limitations period on such a claim is three years. *See Browning v. Pendleton*, 869 F.2d 989, 991 (6th Cir. 1989) (citing *Owens v. Okure*, 109 S. Ct. 573, 582 (1989) ("where state law provides multiple statutes of limitations for personal injury actions, courts considering §1983 claims should borrow the general or residual statute for personal injury actions")). All of Jones's claims, therefore, were timely filed. *See* MICH. COMP. LAWS § 600.5805(10). In order to establish a prima facie case for retaliation in violation of the First Amendment, a plaintiff must show that (1) he engaged in a constitutionally protected activity; (2)

11

the defendant's action caused him to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in the activity; and (3) the adverse action was motivated—at least in part—by the plaintiff's exercise of his constitutional rights. *Timm v. Wright State Univ.*, 375 F.3d 418, 422-23 (6th Cir. 2004) (citing *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998)).

The defendants do not challenge—and we therefore do not address—the district court's finding that Jones engaged in activity protected by the First Amendment. And we agree with the district court's conclusion that Jones's being subjected to the discipline (punishment that could have hurt his promotion prospects) and required to repay the overtime (lost wages), and his failure to obtain the FBI undercover job (lost wages and title) are all adverse employment actions. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 396-97 (6th Cir. 1999) (en banc) (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982) (stating that discharge, demotion, refusal to hire, non-renewal of contracts, and failure to promote are examples of adverse employment actions in the context of § 1983 actions based on the First Amendment)). However, the circulation of rumors about Jones is not an adverse employment action, nor does it rise to the level of a hostile work environment; this is the kind of "minor harassment" that is not actionable in constitutional cases. *See Thaddeus-X*, 175 F.3d at 397; *Mattox v. City of Forest Park*, 183 F.3d 515, 521 (6th Cir. 1999).

To satisfy the third prong of the prima facie case, Jones was required to provide some evidence that the adverse employment actions had some tangible connection to his providing testimony in the Madrigal matter. Jones wholly failed to provide such evidence.

### 1. Discipline

Dobson disciplined Jones for not reporting to him the stabbing incident that took place on Dobson's front lawn in February, a few months before Jones was scheduled to give testimony in the

12

Madrigal matter. The district court found, and our review of the record confirms, that Jones presented no evidence other than temporal proximity to support his claim that this discipline was imposed either in retaliation for or in an attempt to prevent Jones's testifying. The mere proximity in time of the allegedly retaliatory act to the plaintiff's exercise of his constitutional right is not enough to establish causation. *See Cushman-Lagerstrom v. Citizens Ins. Co. of Am.*, 72 Fed. Appx. 322, 332 (6th Cir. 2003). Jones has failed to establish a prima facie case with regard to the imposition of discipline.

### 2. Repayment of Overtime

Jones was forced to repay overtime that was erroneously paid to him in April 2002 for time spent going to the doctor's office during a time when he was on disability leave and unable to work. The error was discovered in May 2002; Jones had been deposed and was scheduled to testify before the City Commission regarding the Madrigal matter when he was asked to repay the $233.60, making the action temporally proximate to the testimony. The defendants argue that there was an unwritten policy in place regarding overtime pay in these circumstances that was subsequently reduced to writing. While the existence of a policy is a disputed fact, the district court found and the record establishes that the money had in fact been improperly paid to Jones, and that Jones failed to provide any evidence that Dobson's demand that it be repaid was motivated by any retaliatory animus. Indeed, our review of the record persuades us that Jones's union agreed that the money had been improperly paid to him, and should be repaid. Jones has failed to establish the causation element of a prima facie case of retaliation with regard to the overtime pay.

### 3. FBI Position

13

The undisputed facts are that, after Jones testified in the Madrigal matter, he applied for an undercover position with the FBI and he did not get the job. The district court found that representatives from the State Police and the FBI made the hiring decision and Dobson had nothing to do with it, and that this fact was fatal to Jones's claim. Jones contends that Dobson had told the interviewers that he wanted Sergeant Mathis hired and they simply did his bidding. Jones presented no specific evidence to support his belief that Dobson influenced the hiring decision, but even if Jones's suspicions are correct, he has offered no evidence whatsoever that Dobson was motivated in any way by Jones's participation in the Madrigal matter. Because temporal proximity alone is not sufficient to show causation, *see Cushman-Lagerstrom*, 72 Fed. Appx. at 332, Jones has failed to establish the causation element of a prima facie case of retaliation with regard to his failure to obtain the FBI position.

### 4. Posting Tobacco Sting Assignments and Hostile Environment

We addressed earlier with regard to the WPA claims Jones's failure to establish the causation element relative to his claim that he was denied the opportunity to participate in the tobacco sting operation. The analysis here is identical, and yields the identical result. And Jones's hostile environment claim fails here, as it did in the context of his WPA claim, because the spreading of rumors is simply not sufficient to demonstrate a hostile work environment.

We therefore conclude that the district court correctly granted summary judgment to the defendants on Jones's claims of retaliation.

### V. Withdrawal of Admitted Statements

During discovery, Jones submitted to the defendants several requests for admissions. Among them was one which stated "The City of Allen Park and Chief Kenneth Dobson retaliated against

14

and harassed Larry Jones because of his testimony in the Marcos Madrigal lawsuit." The defendants did not respond to the requests until thirty days after they were due, and Jones argues on appeal that the district court should have deemed them admitted and considered them in ruling on the motion for summary judgment. The district court addressed this argument in its order denying Jones's motion for reconsideration, finding that the request to admit was in improper form because it asked the defendants to admit the ultimate issue, which was vigorously contested, and that the defendants' motion for summary judgment should be considered to be a motion to withdraw any such admission if it was deemed admitted by operation of law.

We decline to undertake the analysis required to determine whether the district court erred, because it is clear that any error is entirely harmless. Even if this statement were deemed admitted, it is vague and conclusory and, in the absence of evidence sufficient to establish a prima facie case of retaliation, wholly insufficient to support any of Jones's claims. That evidence is, as we have explained, entirely absent.

## VI.  Reassignment

Jones argues that the district court should have ruled favorably on his motion to re-assign the case to District Judge Arthur Tarnow because Judge Tarnow was the judge presiding over the Madrigal case and Jones's case is a "companion case" to that matter. The district court's decision regarding whether or not to reassign a companion case is reviewed for an abuse of discretion. *See Gen. Motors Corp. v. Buha*, 623 F.2d 455, 458 (6th Cir. 1980).

Eastern District of Michigan Local Rule 83.11 governs the re-assignment of companion cases, stating that "[c]ompanion cases are those in which it appears that: (I) substantially similar evidence will be offered at trial, or (ii) the same or related parties are present, and the cases arise out

15

of the same transaction or occurrence . . . ." E.D. Mich. R. 83.11(b)(7). The district court correctly found that, though many of the same people would be involved in both suits, the focus of their testimony would be different because Jones would present the witnesses in support of the fact that he has been retaliated against and Madrigal would present the witnesses in support of the fact that he was discriminated against on the basis of race and national origin. Also, though "related parties" are present, the cases do not arise out of the same transaction or occurrence because the Jones suit did not arise out of the racial or national origin discrimination that befell Madrigal; rather, Jones's suit arose out of the Madrigal lawsuit. The district court did not abuse its discretion in refusing to reassign the case to Judge Tarnow.

## VII. Motions to Strike

Prior to oral argument, the parties filed motions and counter-motions to strike portions of the opposing party's briefs on appeal for various reasons. None of the provisions that either party seeks to strike played any part in the analysis of this case, and we therefore deny the motions to strike.

## VIII. Conclusion

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

16