**Frank MASSEY, Plaintiff,**

v.

**INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA et al., Defendants.**

**No. 05–CV–71766–DT.**

United States District Court,
E.D. Michigan,
Southern Division.

June 29, 2006.

Craig S. Romanzi & Associates, PC, Waterford, MI, for Plaintiffs.

Michael Nicholson, Ann Arbor, MI, for Defendants.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

CLELAND, District Judge.

Plaintiff initiated this action on May 4, 2005, asserting claims against Defendants for defamation, intentional infliction of emotional distress, civil conspiracy, and violation of the Labor Management Reporting and Disclosure Act of 1959, 42 U.S.C. § 401 et seq. ("LMRDA"). Now pending before the court is Defendants' motion to dismiss, filed on March 3, 2006. Plaintiff filed a response to Defendants' motion on April 12, which conceded only to the dismissal of Gerald Hagerman as Defendant, and Defendants filed a reply on April 19, 2006. The court has concluded that a hearing on the motion is unnecessary.

(*See* 4/05/06 Order at 2; E.D. Mich. LR 7.1(e)(2).) For the reasons stated below, the court will grant Defendants' motion.

## I. BACKGROUND

Plaintiff was elected President of UAW Local 7 in May of 1993. (*See* Pl.'s Am. Compl. at ¶ 9.) As local President, Plaintiff received a portion of his pay from both the local union and Chrysler Corporation. (*Id.*) Plaintiff alleges that then-President of the International UAW, Sephen P. Yokvich, used his power to support certain candidates for administrative positions, and "retaliate against those local Presidents who did not support candidates of his choosing for elected offices within UAW International." (*Id.* at ¶¶ 10–11.) In the 1996 election for a Regional Director Position, Plaintiff supported Leon Matthews, while Yokvich supported eventual winner Nate Goodin. (*Id.* at ¶¶ 11–12.)

After this election, Defendant allegedly retaliated against Plaintiff and several other local presidents, which resulted in Plaintiff being removed as Local 7 President. (*Id.* at ¶ 12.) Plaintiff states that prior to the 1996 Regional Director election, Local 7 had been subjected to financial audit by both the International UAW and the U.S. Department of Labor, with no financial irregularities reported. (*Id.* at ¶ 13.) Defendant Hagerman, however, conducted an unscheduled audit soon after the 1996 election, and concluded that Plaintiff had engaged in financial misconduct by receiving and retaining a "wage overpayment" for profit sharing that he had received from Chrysler during the years 1995, 1996, and 1997 totaling $39,882.46. (*Id.* at ¶ 14.) Furthermore, after a second visit to Local 7 for a further audit, Defendant Hagerman also found that Plaintiff had improperly received and retained travel expense reimbursements in 1996, which totaled $129.14, payment in lieu of vacation in the amount of $675.20. (*Id.* at ¶¶ 15–17.) Defendant also asserted that Plaintiff owed $840.23 in allegedly underpaid dues. (*Id.* at ¶ 17.)

Based on the results of these two unscheduled audits, Defendants determined that Plaintiff had engaged in financial misconduct and posted a public notice that Plaintiff was no longer a member in good standing of UAW Local 7. (*Id.* at ¶¶ 18–19.) Furthermore, Defendants informed the local's bonding company of the alleged wrongdoing, which resulted in the automatic revocation of Plaintiff's bond. (*Id.* at ¶ 20.) This resulted in Plaintiff's removal from his presidency of Local 7. (*See id.* at ¶ 21.)

Plaintiff contends that the allegations that he engaged in financial misconduct were false, and that both Local 7's bylaws and past and current UAW local presidency profit sharing precedent support his contention. (*Id.* at ¶ 26.) Most recently, Plaintiff submitted his name as a candidate for local President in the May 2005 union election, but was found ineligible by Defendant for lack of good standing. (*Id.* at ¶¶ 22–23.) Plaintiff initiated this action on May 4, 2005, asserting against Defendants claims for defamation, intentional infliction of emotional distress, civil conspiracy and violation of the LMRDA. By leave of court, Plaintiff filed a "First Amended Complaint and Jury Demand," on January 18, 2006. Now pending before the court is "Motion of Defendants International Union, UAW and Gerald Hagerman pursuant to Fed. R. Civ. Pro. 12(b)(2), (5) and (6) to dismiss complaint for lack of personal jurisdiction and for insufficiency of service of process as to Defendant Hagerman and for failure to state a claim against either Defendant upon which relief can be granted." (*See* Def.'s Mot. at 1.)

Plaintiff filed a response to Defendants' motion on April 12, in which Plaintiff agreed to the dismissal of Gerald Hagerman as a defendant. (*See* Pl.'s Resp. at 1.) Plaintiff, however, disputes that his claims are time-barred, and contends that the statutes of limitation were tolled under the "continuing violations" doctrine. Plaintiff also disputes that his 2005 election claim is barred by Title IV of the LMRDA. (*See id.* at 3–4.)

## II. STANDARD

In ruling on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil of Civil Procedure, the court must construe the complaint in a light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. *See Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996); *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir.1996); *Wright v. MetroHealth Medical Center*, 58 F.3d 1130, 1138 (6th Cir.1995). When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor. *See Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir.1995); *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir.1993); *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir.1993). Hence, a judge may not grant a rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations. *See Wright*, 58 F.3d at 1138; *Columbia Natural Resources, Inc.*, 58 F.3d at 1109.

Though decidedly liberal, this standard of review does require more than the bare assertion of legal conclusions. *See Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir.1996); *LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1100–01 (6th Cir.1995). The complaint should give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *See Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir.1994). "In practice, 'a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Lillard*, 76 F.3d at 726 (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988)).

## III. DISCUSSION

In its motion, Defendant makes two claims. First, Defendants assert that this action against Defendant Gerald Hagerman should be dismissed pursuant to Federal Rule of Civil Procedure (12)(b)(2) and (5) for lack of personal jurisdiction and insufficiency of service of process. Second, Defendant asserts that this action should be dismissed as to both defendants pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

### A. Defendant Gerald Hagerman

Defendants asserts that the action against Defendant Gerald Hagerman should be dismissed pursuant to Federal Rules of Civil Procedure (12)(b)(2) and (5) for lack of personal jurisdiction and insufficiency of service of process. In his response, Plaintiff concedes that Defendant Hagerman should be dismissed. (*See* Resp. at 1.) Accordingly, the court will grant Defendants' motion as to Defendant Gerald Hagerman.

### B. Defendant UAW

Defendants next assert that this action should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted because Plaintiff's challenge to his 2005 election disqualification is barred by

Title IV of the LMRDA, and because his tort claims and pre–2005 claims under Title I of the LMRDA were untimely.

### 1. Election Disqualification

■ Congress passed the LMRDA in response to the "widespread abuses of power by union leadership." *Local No. 82, Furniture and Piano Moving, Furniture Store Drivers, Helpers, Warehousemen and Packers v. Crowley,* 467 U.S. 526, 536, 104 S.Ct. 2557, 81 L.Ed.2d 457 (1984) (citing *Finnegan v. Leu,* 456 U.S. 431, 435, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982).). Title I of the Act contains a union member "Bill of Rights," which is "designed to guarantee every union member equal rights to vote and otherwise participate in union decisions, freedom from unreasonable restrictions on speech and assembly, and protection from improper discipline." *Id.* at 536–537, 104 S.Ct. 2557. Title IV of the Act, however, "sets standards for eligibility and qualifications of candidates and officials and provides its own separate and different administrative and judicial procedure for challenging those standards" in union elections. *Calhoon v. Harvey,* 379 U.S. 134, 138, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964). Because Plaintiff's claim is that he was improperly disqualified as a candidate in a union election that has already occurred (*See* Pl.'s Am. Compl. at ¶¶ 22–24), Title IV of the Act controls this claim. *See Calhoon,* 379 U.S. at 140, 85 S.Ct. 292.

Plaintiff alleges that on April 8, 2005, he submitted his name as a potential candidate, and then on April 22, 2005, Plaintiff received a letter from Defendants stating that Plaintiff was ineligible to run due to his lack of good standing in the union. (*See* Pl.'s Am. Compl. at ¶¶ 22–24.) Plaintiff now tries to bring this claim under the LMRDA Title I, specifically 29 U.S.C. 411, § 101(a)(1). (*Id.* at 10.) However, the Supreme Court has held that this section is "no more than a command that members

and classes of members shall not be discriminated against in their right to nominate and vote." *Calhoon,* 379 U.S. at 139, 85 S.Ct. 292. Plaintiff was free to and in fact did nominate himself for President. (*See* Pl.'s Am. Compl. at ¶ 22.)

In *Calhoon,* the Supreme Court considered a claim brought under Title I, but determined that Title IV, not Title I, applied because:

> The complaining union members here have not been discriminated against in any way and have been denied no privilege or right to vote or nominate which the union has granted to others. They have indeed taken full advantage of the uniform rule limiting nominations by nominating themselves for office. It is true that they were denied their request to be candidates, but that denial was not a discrimination against their right to nominate, since the same qualifications were required equally of all members.

*Calhoon,* 379 U.S. at 139, 85 S.Ct. 292.

Thus, any remedy for Plaintiff's disqualification claim must be brought under Title IV. In *Trbovich v. United Mine Workers of Am.,* 404 U.S. 528, 531, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972), the Supreme Court found that "suit by the Secretary [of Labor] was the 'exclusive' post-election remedy for a violation of Title IV." *See* 29 U.S.C. § 483. Congress made the decision not to allow suit by individual union members after careful consideration of the alternative, primarily for two reasons: "(1) to protect unions from frivolous litigation and unnecessary judicial interference with their elections, and (2) to centralize in a single proceeding such litigation as might be warranted with respect to a single election." *Trbovich,* 404 U.S. at 532, 92 S.Ct. 630.

Recently, in *Davis v. UAW,* 390 F.3d 908, 911 (6th Cir.2004), the Sixth Circuit

described the LMRDA Title IV scheme for regulation of internal union election disputes in greater detail:

A union member who wishes to challenge the results of an election under the LMRDA must therefore file a complaint with the Secretary of Labor. 29 U.S.C. § 482(a). If the Secretary finds probable cause to believe that a violation of the LMRDA has occurred, the Secretary may file suit in federal district court ... [T]he district court does not have jurisdiction to adjudicate the claims of the private parties unless the Secretary of Labor has instigated the action.

*Id.*

Plaintiff acknowledges that "the Secretary of Labor is exclusively vested with the right to investigate and challenge the validity of an election," (Pl.'s Resp. at 10), but attempts to avoid this law by claiming that he is not seeking to declare the election void but rather is maintaining a cause of action based on Defendants' alleged continued violation of his rights. Plaintiff's creative characterization of his claim, however, cannot avoid the implications of Title IV. As the Supreme Court has held, disputes "basically relating as they do to eligibility of candidates for office, fall squarely within Title IV of the Act, and are to be resolved by the administrative and judicial procedures set out in that Title." *Calhoon,* 379 U.S. at 141, 85 S.Ct. 292.

Plaintiff's claim is that he was disqualified as a candidate pursuant to a union regulation. *See Calhoon,* 379 U.S. at 139, 85 S.Ct. 292. A post-election challenge to this election regulation cannot be brought under Title I, but only under Title IV and by the Secretary of Labor, upon her finding probable cause that a violation of the Act has occurred. *See Davis,* 390 F.3d at 911. Accordingly, Plaintiff's challenge to his 2005 election disqualification is governed by Title IV of the LMRDA, and

Defendant's motion will therefore be granted as to any claim relating to this allegation.

## 2. Timeliness of the Remaining Claims

In their motion, Defendants also argue that they are entitled to dismissal of Plaintiff's remaining claims, which arise from actions allegedly taken by Defendants in 2000. Defendants assert that Plaintiff's claims relating to these actions are time-barred.

 Plaintiff does not dispute the applicable statute of limitations on his remaining claims. (*See* Pl.'s Resp. at 7.) The Michigan limitation period for defamation is one year, and the limitation period for intentional affliction of emotional distress and conspiracy is three years. *See* M.C.L. § 600.5805(9) and (10); *Townshend v. Hazelroth,* 875 F.Supp. 1293, 1299 (E.D.Mich. 1995); *Volker v. Detroit Edison Co.,* 879 F.Supp. 67, 69 (E.D.Mich.1994); *Campos v. General Motors Corp.,* 71 Mich.App. 23, 246 N.W.2d 352, 354 (Mich.Ct.Ap.1976). Congress has not enacted any federal limitations periods for LMRDA Title I claims, but the Supreme Court has held that LMRDA Title I, § 101(a)(2) claims are governed by a borrowed state residual personal injury limitation period. *See Reed v. United Transp. Union,* 488 U.S. 319, 323, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989). After *Reed,* the Sixth Circuit held that LMRDA Title I, § 101(a)(1) claims are also governed by a borrowed state residual personal injury limitation period. *See Allgood v. Elyria United Methodist Home,* 904 F.2d 373, 378 (6th Cir.1990). The applicable Michigan state residual personal injury limitation period is three years. *See* M.C.L. § 600.5805(10).

 It is clear from Plaintiff's complaint that the limitation period normally would have already expired on his state law and

pre–2005 LMRDA Title I claims before the filing of this suit. (See Pl.'s Resp. at 7; Pl.'s Am. Compl. at 2–6.) Indeed, the only event mentioned in the complaint that occurred after 2000, was the alleged improper disqualification of Plaintiff as a candidate for the office of President, which Plaintiff asserts occurred in May of 2005.[1] Plaintiff, however, argues that under the continuing violations doctrine the limitation periods were tolled on these claims. The Michigan Supreme Court first recognized this doctrine within the context of civil rights violations in the case of *Sumner v. Goodyear Tire & Rubber Co.*, 427 Mich. 505, 398 N.W.2d 368 (1986). In *Sumner*, the court held that "under the Handicappers' Civil Rights Act, an action is timely so long as it is filed within three years after the cessation of a deprivation proximately caused by such a policy and there is an application of that policy within the period of limitations." *Id.* at 381. In addressing the continuing violations doctrine, the Sixth Circuit has said:

> In evaluating whether such course of conduct exists, Michigan Courts have considered: (1) whether the alleged acts involve the same type of discrimination; (2) whether the alleged acts are recurring or isolated; and (3) the degree of permanence of the act—i.e., whether it

should indicate to the employee that he or she should assert his or her rights. *Jones v. City of Allen Park*, 167 Fed.Appx. 398, 404–05 (6th Cir.2006) (citing *Sumner*, 398 N.W.2d at 383); *Phinney v. Perlmutter*, 222 Mich.App. 513, 564 N.W.2d 532 (1997).

The Michigan Supreme Court expressly overruled *Sumner* last year in *Garg v. Macomb County Cmty. Mental Health Servs.*, 472 Mich. 263, 696 N.W.2d 646 (2005), stating: "[W]e overrule *Sumner* and hold that a person must file a claim under the Civil Rights Act within three years of the date his or her cause of action accrues, as required by § 5805(10). That is, 'three years' means three years." *Id.* at 656 (footnote omitted). While the *Garg* Court only directly addressed the doctrine as applied to Michigan's Civil Rights Act, the reasoning is equally applicable to all Michigan statutes of limitations which have been extended through case law by application of the continuing violations doctrine. *See id.* at 658 ("To allow recovery for such claims is simply to extend the limitations period beyond that which was expressly established by the Legislature."). The court is thus inclined to find that the continuing violations doctrine is no longer viable under Michigan law and cannot be used to extend the relevant Michigan statutes of limitations.[2] *Jones,*

---

1. As discussed above, however, this event does not give rise to a cause of action, inasmuch as any action based on this allegation must be brought by the Secretary of Labor.

2. Since *Garg*, there have only been three Sixth Circuit cases to address Michigan's continuing violations doctrine. The Sixth Circuit, however, has yet to rule on the viability of the continuing violations doctrine because, in each of these cases, the doctrine was either abandoned or unsustainable under the facts of the case. *Hite v. Norfolk Southern Railway Co.*, 181 Fed.Appx. 514, 2006 WL 1313371, *4 (6th Cir.2006) (It is unnecessary, however, for this Court to attempt to predict the Michigan courts' treatment of the continuing violation

doctrine in various causes of action for a simpler reason—there is no factual support in the record for Hite's claim that his treatment constituted a continuing violation.); *Jones*, 167 Fed.Appx. at 404 ("We need not decide whether Michigan courts are likely to continue to allow the continuing violations doctrine to be used to toll the statute of limitations on WPA claims because Jones has not made a showing sufficient to find a continuing violation."); *Cochran v. United Parcel Service, Inc.*, 137 Fed.Appx. 768, 771 (6th Cir.2005) ("Plaintiff, mindful of the Michigan Supreme Court's overruling of *Sumner*, abandoned her position on the continuing violations doctrine at oral argument.").

167 Fed.Appx. at 404 ("Although we conclude that the district court correctly found that Michigan has adopted the 'continuing violation' doctrine with regard to the WPA ... we think that the viability of that doctrine in Michigan has been called into doubt since the district court entered its decision in this case.") (internal citations omitted) (citing *Garg,* 696 N.W.2d at 656–59). Nonetheless, the court need not definitely determine to what extent the continuing violations doctrine remains good law in Michigan, because even if it is remains viable, Plaintiff will not be able to utilize it under the facts as presented in Plaintiff's complaint.

In support of this doctrine's application to his case, Plaintiff points to *Granet v. Wallich Lumber,* 563 F.Supp. 479 (E.D.Mich.1983), in which the doctrine was used to extend the limitation period in a case of alleged defamation. In *Granet,* however, the plaintiff alleged a valid current violation. *See Granet,* 563 F.Supp. at 481. Plaintiff has failed to do so in the present case because, as discussed above, the court lacks jurisdiction over Plaintiff's sole alleged violation within the limitations period. Plaintiff's remaining claims, therefore, cannot be resurrected using the continuing violations doctrine. *See Sumner,* 398 N.W.2d at 383 ("The mere existence of the continuing harassment is ... insufficient if none of the relevant conduct occurred within the limitations period.").

Furthermore, even if Plaintiff had alleged a valid claim within the limitations period, his collective claims would fail to meet at least one other necessary element of the continuing violations doctrine. In *Jones,* the Sixth Circuit refused to apply this doctrine because it found that a police officer alleging improper discipline, denial of promotion, and denial of overtime due to his testimony in a separate case against the police department, should have been on notice that his rights had been violated, because the officer admittedly felt wronged each time and had voiced this feeling to others. *See Jones,* 167 Fed. Appx. at 404–05. Likewise, in the present case Plaintiff should have been on notice that his rights had been violated. Plaintiff admittedly knew that previous auditors examining the same records had not found him guilty of financial misconduct, and Defendant had posted a public notice of his lack of union good standing. (*See* Pl.'s Am. Compl. at 3–5.) Indeed, the heart of Plaintiff's claims relate to actions taken by Defendants, not in 2005, but in 2000. Plaintiff has simply not asserted the type of recurring, non-permanent violations which would invoke the continuing violations doctrine, even if it remained viable under Michigan law. Accordingly, Plaintiff's state law tort claims and pre-2005 claims under Title I of the LMRDA are time-barred, and Defendants' motion to dismiss will therefore be granted in its entirety.

## IV. CONCLUSION

For the reasons stated above, IT IS ORDERED that Defendants' motion to dismiss [Dkt. # 13] is GRANTED.