File Name: 06a0343n.06
Filed: May 15, 2006

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 05-1910

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

SCOTT HITE,

     Plaintiff-Appellant,

v.

NORFOLK SOUTHERN RAILWAY
COMPANY,

     Defendant-Appellee.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF MICHIGAN

———————————————————————————/

Before:     MARTIN, GUY, and CLAY, Circuit Judges.

     BOYCE F. MARTIN, JR., Circuit Judge.  Scott Hite appeals the district court's entry of

summary judgment in favor of defendant Norfolk Southern Railway Company and dismissal of his

claims under Michigan's Public Officers and Employees Whistleblowers' Protection Act, Mich.

Comp. Laws §§ 15.361 *et seq.*  For the foregoing reasons, we affirm the entry of summary judgment.

I.

     Hite worked as a Block Operator for Norfolk Southern and its predecessor Conrail beginning

on June 23, 1997 in Kalamazoo, Michigan.  In March 2004, Norfolk Southern learned that Hite had

made a videotape of company property.  Sometime before creating the tape, Hite had reported what

he claimed were unsafe working conditions at Norfolk Southern to the Michigan Occupational

Safety and Health Administration.  After learning of the videotape, Norfolk Southern determined

that Hite's actions violated several of the company's Safety and General Conduct Rules. On May 6, 2004, Norfolk Southern sent Hite a letter to notify him that he would be suspended for eighty days for videotaping company property without authorization, turning his undivided attention away from his work duties, not devoting himself entirely to company service, and entering company property while not on duty.

Subsequently, Norfolk Southern determined that Hite had allowed an unauthorized person to view the videotape, and notified Hite in a May 18, 2004 letter that he was "dismissed in all capacities." Hite challenged this decision through his union, and the company denied his appeal. The union then appealed the company's decision to a Public Law Board, pursuant to the Railway Labor Act and the collective bargaining agreement. The Board held a hearing on Hite's appeal on September 9, 2005, and is yet to issue a decision.

Despite having been dismissed in May, Hite filed a complaint with Norfolk Southern's Internal Audit Department in the fall of 2004 regarding actions taken by the railroad and its officials following his discharge.[1] In connection with Norfolk Southern's investigation of these allegations, Hite received a letter from the Internal Audit Department responding to his complaint. Apparently Hite found the letter unsatisfactory, as he responded with a "profanity laced voice-mail message" to the author of the letter. Norfolk Southern held another disciplinary hearing in response to Hite's voice-mail on January 20, 2005, and on January 27, 2005 informed Hite that he had been "found guilty" of the voice-mail incident, but that his dismissal for that incident would be "held in

---

[1] It is unclear from the record what these allegations specifically involved and whether or how they were related to Hite's dismissal.

abeyance" pending the appeal of his earlier dismissal.

Hite filed this lawsuit on November 15, 2004 in Michigan state court, several months after his dismissal for the videotape incident but prior to the voice-mail incident and subsequent investigation.

II.

Hite alleged in his initial state court complaint that he was discharged in retaliation for reporting unsafe working conditions at Norfolk Southern in violation of Michigan's Public Officers and Employees Whistleblowers' Protection Act, MICH. COMP. LAWS § 15.363 *et seq.*[2] On December 22, 2004, Norfolk Southern removed the case to the United States District Court for the Western District of Michigan, which had diversity jurisdiction over the suit.

In his initial state court complaint, filed on November 15, 2004, Hite acknowledged that he "was discharged from his position of employment by defendant NSRC." Hite filed an amended complaint in federal court, apparently after recognizing a potential statute of limitations issue, where he claimed he was "relieved from service" but that "[h]is employment rights have not been completely and finally terminated." Hite later amended his complaint a second time, this time identifying Norfolk Southern's January 27, 2005 decision regarding the voice-mail incident as an additional retaliatory, adverse employment action. On June 9, 2005, the district court granted Norfolk Southern's motion for summary judgment, dismissing with prejudice Hite's claim regarding his initial dismissal on May 18, 2004. The district court agreed with Norfolk Southern that this

---

[2] Hite's state court complaint also included a claim for retaliatory discharge under Michigan common law, but this count was not included in his subsequent federal court filings.

claim was time barred under the ninety-day statute of limitations provided by Michigan's Whistleblowers' Protection Act. Hite's claim regarding the January 27, 2005 conditional discharge related to the voice-mail was dismissed without prejudice as it was not ripe for adjudication, because the conditional discharge would not take effect until after any potential reinstatement resulting from Hite's appeal to the Public Law Board. As a result, only the claim regarding the May 18, 2004 dismissal based on the videotape is before this Court on appeal.

III.

We review a district court's grant of summary judgment *de novo*, and must view "the facts and any inferences that can be drawn from those facts . . . in the light most favorable to the non-moving party." *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1996)). This diversity case is governed by Michigan state law, particularly the Michigan Whistleblowers' Protection Act and its limitations provision, which provides that "[a] person who alleges a violation of this act may bring a civil action for appropriate injunctive relief, or actual damages, or both within ninety days after the occurrence of the alleged violation of this act." MICH. COMP. LAWS § 15.363; *see also Guaranty Trust Co. v. York*, 326 U.S. 99, 110 (1945) (holding that state law statutes of limitations apply in cases where jurisdiction is based entirely on diversity of citizenship).

Hite challenges the district court's entry of summary judgment on several grounds. First, Hite claims that there is a question of material fact as to whether he was actually dismissed on May 18, 2004, pointing to several factors that he claims indicate Norfolk Southern still viewed him as an employee. In a somewhat related argument, Hite claims that Norfolk Southern committed a

continuing violation of the Whistleblowers' Protection Act through its actions after his May 18, 2004

termination, extending the wrongful conduct beyond the time he was discharged, and consequently

delaying the commencement of the limitations period. Finally, Hite claims that because Norfolk

Southern continued to treat him as a "de facto employee" after May 18, 2004, it should now be

estopped from arguing that it had dismissed him at that time and that the statute of limitations period

expired ninety days later.

### A. Norfolk Southern's Treatment of Hite's Employment Status since May 18, 2004

Hite claims that several facts demonstrate that he has "remained a de facto employee" of

Norfolk Southern after the company unequivocally told him that he was discharged. First, Hite

argues that his right to seek review of Norfolk Southern's decision and the pendency of his appeal

to the Public Law Board establish that he still is yet to be discharged.[3] Michigan courts and federal

courts have both recognized, however, that statutes of limitations in cases involving terminations of

employment should run from the initial termination decision, and are not effected by the pendency

of administrative reviews of those decisions. *See Womack-Scott v. Dept. of Corrections*, 246 Mich.

App. 70, 75 (Mich. Ct. App. 2001) (holding that even where an employee was "technically reinstated

for a period as a result of administrative decisions and again discharged," the relevant event for

statute of limitations purposes was the initial discharge); *see also Del. State College v. Ricks*, 449

U.S. 250, 258 (1980) (where the relevant job action for a Title VII lawsuit was the decision to deny

---

[3]It is unclear how this argument would benefit Hite even if it were viable. If the May 18, 2004 discharge was somehow not an actual discharge due to his appeal, it still occurred outside of the limitations period, and Hite identifies no other adverse employment action that occurred in the ninety days prior to the filing of his complaint.

tenure to the professor, the limitations period commenced when the tenure decision was made and communicated to the professor, and not when he eventually left employment). Hite's appeal of his discharge does not convert it to something other than a discharge, and has no effect on the time from which the statute of limitations began to run.

Hite also points to a Norfolk Southern seniority roster that continued to include his name after May 18, 2004, and an employee profile document, dated June 23, 2004 that classified his status as "active" in support of his argument that he remained a "de facto" employee of Norfolk Southern. Even if the company's internal personnel documents should be considered with equal weight as a letter it sent to Hite that unequivocally informed him he was discharged, which seems unlikely, both of these documents also indicated on their face that Hite had been terminated. The seniority roster reads "discharged" next to Hite's name, and the employee profile says that Hite was dismissed on May 18, 2004 and explains the reason for the dismissal. These documents do not create an issue of fact regarding Hite's employment status.

Finally, Hite points to Norfolk Southern's later attempt to discipline him on January 27, 2005 in connection with the profanity laced voice-message he left a Norfolk Southern employee. Hite claims that this later disciplinary effort indicates that Norfolk Southern still viewed him as an employee, as it charged him with "conduct unbecoming an employee." The company's letter to Hite on January 27, 2005, however, makes clear that it was simply endeavoring to reserve its rights to hold Hite accountable for the voice-mail message in case he were successful in his appeal of his discharge

for the videotape incident.[4] Norfolk Southern was not exercising what Hite terms an "employment leash" by keeping him as a de facto employee, but rather was attempting to further distance itself from Hite in the event that the first dismissal was overturned.

Norfolk Southern also pointed out that Hite acknowledged that he had been discharged in a letter where he returned his ID card, as well as in his initial state court complaint. These statements further demonstrate that Hite believed he was fired after receiving Norfolk Southern's letters, and only raised his more nuanced argument that he remained a "de facto" employee once he became aware of the statute of limitations issue.

The case Hite relies on to argue that his May 18, 2004 discharge was not in fact a discharge is unavailing. In *Jacobson v. Parda Federal Credit Union*, 457 Mich. 318 (1998), the Michigan Supreme Court held that in a case involving constructive discharge, where the employee was forced to leave her place of employment due to intolerable working conditions, the time of discharge was the bright line date when the employee actually left. The court declined to adopt a rule where the fact-finder would have to identify the time of termination based on when a reasonable person would

---

[4]The letter states:
 "You were dismissed from all employment by the Company on May 18, 2004 and have remained in a dismissed status continuously since that date...In the event you are reinstated by a neutral arbitrator at the conclusion of [the Union's] appeal, you should not be permitted to avoid responsibility for your unbecoming conduct as demonstrated in the January 20, 2005 investigation. Accordingly, this letter will serve to notify you that while you have been found guilty of the December 23, 2004 incident, the dismissal for that incident will be held in abeyance pending the outcome of the appeal of your May 18, 2004 dismissal. In the event you are reinstated as an employee by a neutral arbitrator as a result of your appeal of the May 18, 2004 dismissal, this dismissal by the Company for your December 23, 2004 violation of GCR-I shall be retroactive to the date of this letter."

have felt forced to resign. If it is applicable at all, the holding in *Jacobson* would tend to support

Norfolk Southern's position that the limitations period begins at the time where the employee can

clearly be said to have been terminated — in this case when the unequivocal letter was sent to Hite

on May 18, 2004.

**B. Norfolk Southern's Treatment of Hite and the Pendency of his Appeal as a "Continuing Violation"**

Hite argues that "a question of fact exists as to whether the railroad is continuing to retaliate

against Hite." In granting Norfolk Southern's motion for summary judgment, the district court

focused in large part on the rejection of the continuing violation theory by Michigan state courts.

Under the continuing violation theory, an ongoing string of wrongful actions that begins outside the

limitations period but includes conduct that falls within it would remain actionable. The district

court relied primarily on the Michigan Supreme Court's holding in *Garg v. Macomb County Cmty.*

*Mental Health Servs.*, 472 Mich. 263 (2005), which held that a continuing violation claim cannot

be used to extend the limitations period for a cause of action arising under the Michigan Civil Rights

Act.

Hite argues that *Garg* is not applicable to his claim because that case involved the Michigan

Civil Rights Act rather than the Whistleblowers' Protection Act. It is unnecessary, however, for this

Court to attempt to predict the Michigan courts' treatment of the continuing violation doctrine in

various causes of action for a simpler reason — there is no factual support in the record for Hite's

claim that his treatment constituted a continuing violation. Rather, Hite's termination occurred at

a single temporal point when he was dismissed on May 18, 2004. There is no evidence that Norfolk

Southern took any relevant actions adverse to Hite after it dismissed him on May 18, 2004. The only adverse action that Norfolk Southern took toward Hite after his May 18, 2004 discharge was the January 27, 2005 discipline related to the voice-mail incident, but this incident is not relevant on appeal as an adverse job action given the district court's ruling that it is unripe for judicial review.[5] Thus, even if there is room under Michigan law for a continuing violation argument in a Whistleblowers' Protection Act case, the absence of any relevant violation after Hite's termination would preclude it in this case.

### C. Estoppel

The district court summarily dismissed Hite's estoppel claim, stating in a footnote that "[y]ou cannot reasonably rely upon a 'representation' when the case law tells you to file suit." Hite accurately points out on appeal that this reasoning is entirely at odds with the existence of the doctrine of estoppel, which has been recognized as the law of Michigan. *See Lothian v. Detroit*, 414 Mich. 160, 167 (1982) (A statute of limitations "may be waived by . . . conduct which estops the defendant from interposing it."). Hite is correct in his legal argument that under Michigan law "the entire premise behind estoppel is that although a known requirement may exist, the defendant is precluded from asserting that requirement as a defense due to its conduct in inducing one to forego compliance with the requirement." Appellant's Br. at 17.

---

[5]Hite's argument on appeal that the January 2005 discipline is relevant to show Norfolk Southern's continuing "de facto control" over him is misplaced. As discussed above, Norfolk Southern's reservation of its right to discipline Hite for his profanity laced voice-mail message should he be reinstated by the Public Law Board does not amount to an attempt to keep him within the fold of employment.

Nevertheless, Hite's estoppel argument is still not sufficient to survive summary judgment, as Hite did not identify any conduct by Norfolk Southern whereby it sought to induce him to refrain from filing suit or on which he in fact relied in not filing suit. *See, e.g., Pinner v. Auto Club Ins. Ass'n.,*1999 Mich. App. LEXIS 1024 (Mich. Ct. App. 1999) (holding that to maintain an estoppel claim, a party must identify conduct of the other party that induced it to refrain from bringing suit, as well as actual reliance in not bringing suit). Hite relies here again on his claim that Norfolk Southern treated him as a "de facto employee" after purporting to terminate him on May 18, 2004. Even if Hite in fact considered himself a "de facto employee" after being told in no uncertain terms that he was fired, this does not amount to an effort by Norfolk Southern to convince Hite not to file suit. Of course without any promise or inducement from Norfolk Southern, Hite also cannot identify anything that he actually relied on in refraining from suing during the limitations period. Consequently, there is no material fact that could support Hite's estoppel argument.

While the district court's reasoning in dismissing Hite's estoppel argument was incorrect, the facts do not support an argument of estoppel here, and we affirm the district court's ruling of this issue on different grounds. *Kennedy v. Superior Printing Co.*, 215 F.3d 650, 655 (6th Cir. 2000) ("[B]ecause a grant of summary judgment is reviewed de novo, this court may affirm the judgment of the district court on any grounds supported by the record, even if they are different from those relied upon by the district court.")

## CONCLUSION

The district court's entry of summary judgment in favor of Norfolk Southern is affirmed.