KAUFMAN & PAYTON, PC v NIKKILA

Docket No. 133012. Submitted December 3, 1992, at Detroit. Decided
June 21, 1993, at 9:25 A.M.

The law firm of Kaufman & Payton, P.C., brought an action in
the Oakland Circuit Court against Catherine Nikkila, its for-
mer billing supervisor, alleging conversion and misappropria-
tion of its files and records. Nikkila filed a counterclaim,
alleging retaliatory constructive discharge in violation of the
Whistleblowers' Protection Act, MCL 15.361 *et seq.*; MSA
17.428(1) *et seq.*, intentional infliction of emotional distress, and
defamation. The court, Alice L. Gilbert, J., summarily dis-
missed the claim brought under the Whistleblowers' Protection
Act, ruling that there existed no genuine issue with respect to
the fact that Nikkila or anyone acting on her behalf had not
threatened to report the law firm to the Attorney Grievance
Commission for billing irregularities before she tendered the
resignation she claimed was a constructive discharge in retalia-
tion for her threatened action. Nikkila appealed.

The Court of Appeals *held:*

The trial court correctly concluded that an affidavit by Nikki-
la's attorney, in which the attorney contradicted his earlier
deposition testimony that there had been no threat of a report
of the law firm's billing practices to the Attorney Grievance
Commission before Nikkila's resignation, was insufficient to
create a genuine issue of fact. A party or its attorney may not
contrive factual issues merely by asserting the contrary in an
affidavit after giving damaging testimony in a deposition.

Affirmed.

CONNOR, J., dissenting, stated that discharge in retaliation
for a feared imminent report to authorities, as opposed to
actual knowledge of an imminent report, is sufficient for appli-
cation of the Whistleblowers' Protection Act, that the affidavit
of Nikkila's attorney did not contradict his deposition testi-
mony, and that, if the affidavit and deposition can be consid-
ered contradictory, the benefit of reasonable doubt concerning
the factual question raised by the contradiction should be given
to Nikkila and the question decided at trial.

*Hyman & Lippitt* (by *Norman L. Lippitt* and *H. Joel Newman*), for the plaintiff.

*Temple & Cutler* (by *Donald M. Cutler*), for the defendant.

Before: CORRIGAN, P.J., and WEAVER and CONNOR, JJ.

CORRIGAN, P.J. Catherine Nikkila appeals as of right the trial court's summary dismissal of her counterclaim against the law firm of Kaufman & Payton, P.C.,[1] under the Whistleblowers' Protec-

[1] The trial court's summary disposition left Nikkila with two remaining counterclaims. However, after a hearing, the trial court made an express determination that there was no reason for delay, and made the partial summary judgment a final order pursuant to MCR 2.604(A).

We question the circuit court's certification of this order because the Whistleblowers' Protection Act claim was but one of several theories upon which Catherine Nikkila sought recovery below. Where only one of several theories has been resolved, certification of a final judgment pursuant to MCR 2.604(A) is improper. *Derbeck v Ward,* 178 Mich App 38, 41; 443 NW2d 812 (1989), quoting 3 Martin, Dean & Webster, Michigan Court Rules Practice, Rule 2.604, p 417, observed:

> [I]f a claimant presents merely alternative legal theories, such that he will be permitted to recover on at most one of them, his possible recoveries are mutually exclusive, and he has presented only a single claim for relief. A preliminary disposition of one of his alternative theories cannot be made the subject of a final judgment and resulting appeal under MCR 2.604(A).

The plaintiff's only liability claim against the defendant was for personal injuries. Although several theories of negligence were alleged, partial summary disposition of one, but not all, of the theories was not sufficient to qualify this order as a final judgment under MCR 2.604(A). To warrant certification, the undecided claims should be sufficiently independent of the decided claims to justify splitting the case. The theory disposed of here was not sufficiently independent of the remaining theories. The retaliatory discharge, constructive termination, and wrongful discharge claims seem to be interdependent. Moreover, the parties have apparently stipulated to stay further proceedings until the outcome of this appeal. The only reason justifying this stay is that the remaining theories depend on our ruling.

tion Act, MCL 15.361 *et seq.*; MSA 17.428(1) *et seq.*
We affirm.

The circuit court properly granted partial sum-
mary disposition pursuant to MCR 2.116(C)(10).
Nikkila did not raise a genuine issue of material
fact concerning her Whistleblowers' Protection Act
claim. The circuit court properly found, consider-
ing all the evidence before it, that Nikkila could
not prove that either she or her attorney had
threatened to report the law firm to the Attorney
Grievance Commission *before* her resignation from
the firm.

Catherine Nikkila, the billing supervisor at
Kaufman & Payton for 7½ years, was scheduled to
testify at a deposition in the law firm's suit for
collection of legal fees against a client in February
1989. As she prepared for her testimony with the
law firm's counsel, she became worried about the
legality of certain billing procedures that she had
executed. She decided to consult outside counsel,
Ronald Prebenda. Prebenda advised Nikkila only
about the potential criminal aspects of her con-
duct.

More fundamentally, we question the continuing viability of *any*
trial court certifications under MCR 2.604(A). The court below, apply-
ing MCR 2.604(A), found "no just reason for delay." Such pro forma
invocation of magic words in reality condemns litigants in this state
to years of delay.

We urge circuit judges to deny certifications under MCR 2.604(A) as
long as the enormous docket backlog of this Court continues to
persist. Such certifications are luxuries that the bench and bar of this
state can no longer afford. In the early days of this Court, when the
backlog was nonexistent, the judges of this Court could usually render
a decision well before the trial court could finally render judgment.
MCR 2.604(A) certifications served an important and helpful purpose
in providing quick and definitive appellate resolutions. Now the
situation is reversed. The circuit courts are relatively current, but
this Court is buried in cases. The parties here have waited since mid-
1990 to learn of this Court's disposition of but one small aspect in
ongoing litigation.

The Supreme Court should either act to abolish jurisdiction under
MCR 2.604(A), or authorize this Court to decline certification when-
ever this Court's backlog precludes speedy disposition of piecemeal
claims—a situation that we believe will persist well into the future.

Prebenda thereafter sent two letters to Kaufman & Payton on Nikkila's behalf. The first, dated March 15, 1989, questioned the law firm's billing practices and sought certain assurances from the firm about Nikkila's future duties. The second, dated March 29, 1989, complained of the lack of response to the March 15 letter and prescribed unilateral changes in Nikkila's billing duties.

Alan Kaufman, managing partner of the firm, never formally responded to either letter. The evidence on this record is disputed concerning whether Nikkila was reassigned to different duties; in any event, she continued to receive the same salary. On April 19, 1989, Nikkila tendered her letter of resignation to the law firm. Four days later, on April 23, 1989, she sent a request for investigation to the Attorney Grievance Commission (AGC) and followed up on May 4, 1989, with a formal complaint. Prebenda assisted her in drafting the formal complaint to the AGC.

On May 22, 1989, Kaufman & Payton sued Nikkila for conversion and misappropriation of the firm's files and records. Nikkila answered and also filed a countercomplaint against the law firm, alleging constructive termination, retaliatory discharge, discharge in violation of the Whistleblowers' Protection Act, intentional infliction of mental distress, and defamation. She also filed a separate complaint against Alan Kaufman, alleging essentially the same claims.

The Kaufman proceedings were consolidated with this case in the circuit court. However, Nikkila did not file a claim of appeal in the case against Kaufman. This case, accordingly, relates solely to the circuit court's grant of partial summary disposition of Nikkila's countercomplaint against Kaufman & Payton concerning the Whist-

leblowers' Protection Act claim. The theory alleged
in Nikkila's countercomplaint was that Kaufman
& Payton constructively discharged her because
she had reported or was about to report an alleged
violation of law, rule, or regulation. The central
issue is whether Nikkila or anyone acting on her
behalf, threatened, mentioned, or otherwise indi-
cated that Nikkila might report Kaufman & Pay-
ton or any of its attorneys to any agency *before*
her April 19 resignation.

In deciding that Nikkila had not made out a
genuine issue of material fact with regard to this
question, the circuit court analyzed the evidence
as follows:

> First, Nikkila testified that she could not re-
> member speaking to her employer about threat-
> ened action. (Nikkila deposition, pp 109-111). Sec-
> ond, Nikkila's husband and attorney Prebenda
> both testified that they did not know about the
> grievance request until *after* Nikkila filed it *after*
> she left her employment. (Jeffrey Nikkila deposi-
> tion, pp 41-42; Prebenda deposition, p 92). Next,
> the deposition testimony of Defendant Alan Kauf-
> man referred to threats made by Prebenda, not
> Nikkila. (Kaufman deposition, p 93). Finally, the
> court notes that the affidavit of Prebenda in sup-
> port of Nikkila's claim, which states that Prebenda
> advised Irwin Alterman of Nikkila's doings prior
> to her resignation, wholly contradicts Prebenda's
> deposition testimony that he did not notify or
> threaten anyone on Nikkila's behalf prior to her
> resignation.

The circuit court did not err in disregarding Pre-
benda's affidavit. It is undisputed in the record
below that an affidavit dated December 1989 was
not filed in this cause until after defendant moved
for summary disposition. Prebenda's later-filed affi-
davit contradicted his deposition testimony in rele-
vant details.

During his deposition, Prebenda testified:

*Q.* Did you assist Ms. Nikkila in filing a grievance against Alan Kaufman?

*A.* Yes, I did.

*Q.* When did you determine that you would file such a grievance?

*A.* She told me—first of all, *she filed a grievance without my knowledge.* She had filed some preliminary documents of some kind that to this day I have never seen.

*Q.* Did you discuss doing so with her prior to that time?

*A.* I have no present—prior to what time?

*Q.* Prior to filing this document to the grievance board to which you were unaware.

*A.* My understanding was that *she had filed something with the grievance commission that I had no knowledge of and there was no discussion of to the best of my knowledge* and then at that time she came to me and asked me if I would assist her in filing a complaint, and I read in the rules, and the rules that you must assist a person that request that you file a grievance and I complied with the rule.

*Q.* Do you recall approximately when you assisted her filing this more formal complaint against Mr. Kaufman?

*A.* No, I don't recall. I assisted her as to form only.

Earlier in that deposition, Mr. Prebenda had stated:

*Q.* Do you recall ever telling anyone that you on behalf of Ms. Nikkila intended to file a State Bar grievance against Mr. Kaufman or his law firm?

*A.* No. I have no recollection of telling him that. No.

*Q.* Tell Mr. Kaufman that or anyone else?

*A. I never talked to Alan Kaufman after I wrote*

*that letter, he chose never to face me.* [Emphasis supplied.]

The lower court also considered Alan Kaufman's affidavit, in which he amplified his deposition testimony. In it, he referred to threats by Prebenda after Nikkila resigned that he would file a State Bar Grievance *on his own behalf* and not as a representative of Catherine Nikkila. Further, Kaufman averred that at no time *before* Nikkila left her position did Prebenda, Nikkila, or anyone else state that Nikkila was contemplating filing a grievance with the State Bar regarding Kaufman or his firm. Similarly, the law firm administrator's affidavit averred that she had no conversation regarding this subject with Prebenda *before* Nikkila's departure from the firm. These assertions are all fully consistent with Prebenda's deposition testimony on these points and further demonstrate the absence of a genuine issue of material fact.

Although Prebenda's deposition testimony in some respects displayed a failure of his memory, on the precise points at issue, his deposition testimony was intelligent, clear, and unequivocal. By contrast, Prebenda's affidavit averred that he had informed Irwin Alterman, then a partner in the firm, *before* Nikkila's resignation that Nikkila had been advised to go to the Attorney Grievance Commission and intended to do so. The circuit court appropriately disregarded Prebenda's contradictory, later-filed affidavit in deciding whether a genuine issue of material fact existed. In *Downer v Detroit Receiving Hosp,* 191 Mich App 232; 477 NW2d 146 (1991), this Court observed that the plaintiff's affidavit contradicted testimony she had previously given in a deposition. *Downer* recognized the principle that parties may not contrive factual issues merely by asserting the contrary in

an affidavit after having given damaging testimony in a deposition, and held that a trial court that disregards such testimony does not err.

The principle, as discussed in *Griffith v Brant,* 177 Mich App 583; 442 NW2d 652 (1989), and *Peterfish v Frantz,* 168 Mich App 43; 424 NW2d 25 (1988), is not limited to *parties* who make contradictory assertions. The principle that contradictory affidavits should be disregarded stands irrespective of the identity of the maker of the conflicting statements. Even if the *Griffith-Peterfish-Downer* principle is somehow limited, a party is bound by representative admissions of counsel. Neither a party nor that party's legal representative may contrive factual issues by relying on an affidavit when unfavorable deposition testimony shows that the assertion in the affidavit is unfounded.

Even if Prebenda's contradictory assertions would somehow create a genuine issue of material fact as to Kaufman & Payton, they are totally insufficient to make a case against Alan Kaufman personally. At best, Prebenda told Irwin Alterman, a partner in Kaufman & Payton, of Ms. Nikkila's threat before her resignation. Prebenda concededly never spoke directly to Kaufman. We see no proof in this record that Alterman ever relayed the substance of his discussions with Prebenda to Kaufman. Further, Kaufman acknowledges that he spoke to Prebenda only after Nikkila had already resigned.

Finally, we disagree with the dissent's advocacy of a reduction in the burden of proof in claims under the Whistleblowers' Protection Act. An employer's subjective fear of retaliation will not substitute for some form of notice of threatened action. Instead, an employer is entitled to objective notice of a report or a threat to report by the whistleblower. Neither Kaufman's nor the firm's

knowledge that Nikkila had retained counsel, together with other unspecified evidence, yields an inference that the firm believed *before* she resigned that she would report her complaints to responsible agencies. Plaintiff did not present adequate evidence that a record might be developed upon which reasonable minds could differ with regard to the whistleblower claim.

Affirmed.

WEAVER, J., concurred.

CONNOR, J. *(dissenting)*. I dissent. I believe the trial court erred in granting Kaufman & Payton, P.C., and Alan J. Kaufman[1] summary disposition. I would reverse and remand for further proceedings.

A motion for summary disposition brought pursuant to MCR 2.116(C)(10) tests whether there is

[1] As a preliminary matter, I must discuss which parties and claims are before this Court. Kaufman & Payton filed an action against Nikkila. Nikkila then filed several counterclaims against Kaufman & Payton. She also filed claims against Alan J. Kaufman in a separate action. The trial court ordered the two cases to be "joined and consolidated." Thus, there was only one case in the trial court, albeit with several parties and many claims.

The caption of the trial court order from which Nikkila appeals lists only Kaufman & Payton and Nikkila as parties. However, the order expressly grants summary disposition both to Kaufman & Payton and Alan Kaufman with regard to Nikkila's whistleblower claims against each. Nikkila's claim of appeal likewise does not list Alan Kaufman as a party or appellee.

By not listing Alan Kaufman as a party or an appellee, Nikkila's claim of appeal failed to conform to the requirements of MCR 7.204(D)(1). However, Alan Kaufman was represented by the same attorneys who represented Kaufman & Payton. Those attorneys filed an appeal brief on behalf of both Kaufman & Payton and Alan Kaufman that listed Alan Kaufman as an appellee. I would conclude that, because Nikkila filed a claim of appeal from the order dismissing her whistleblower claim against Alan Kaufman, because she raised the issue of the dismissal of that claim on appeal, and because Alan Kaufman had actual notice of the appeal and filed an appellee brief, the dismissal of Nikkila's whistleblower claim against him is properly before this Court. Pursuant to MCR 7.216(A)(1) and (2), I would amend the caption of this opinion to conform it to the actual parties before this Court and their respective relationships.

factual support for a claim. Giving the benefit of reasonable doubt to the opponent, the court must determine whether a record might be developed that would leave open an issue upon which reasonable minds might differ. *Amorello v Monsanto Corp*, 186 Mich App 324, 329-330; 463 NW2d 487 (1990).

In this case, the motion tested whether Nikkila could establish retaliation. Kaufman & Payton and Alan J. Kaufman argued below that what they did could not have been retaliation because they did not know Nikkila was going to file a grievance with the Attorney Grievance Commission.

I disagree with the majority's conclusion that showing actual knowledge of an imminent report is required to establish retaliation. The Whistleblowers' Protection Act, MCL 15.361 *et seq.*; MSA 17.428(1) *et seq.*, makes it unlawful for an employer to discriminate against an employee because the employee is about to report a suspected violation of law. MCL 15.362; MSA 17.428(2). Employers do not always wait to discriminate until they have proof that an employee is going to blow the whistle. They may discriminate against an employee they fear may blow the whistle either to nip the problem in the bud, or to give the employee a taste of things to come should the employee actually blow the whistle. If an employer actually discriminates against an employee, it should not matter whether that discrimination is motivated by knowledge or fear. Employers should not be allowed to peremptorily retaliate against employees with impunity. See *McLemore v Detroit Receiving Hosp*, 196 Mich App 391, 396; 493 NW2d 441 (1992). Both Kaufman & Payton and Alan J. Kaufman, Nikkila's supervisor, knew that Nikkila thought Alan J. Kaufman's billing practices were illegal, and both knew that she was very unhappy

about being asked to participate in those practices. Giving Nikkila the benefit of reasonable doubt, I believe a reasonable factfinder could decide that Kaufman & Payton and Alan J. Kaufman suspected Nikkila was going to report those billing practices and made Nikkila's work environment intolerable as a result.

Moreover, even if a showing of actual knowledge is required, I would find that Nikkila made such a showing through the affidavit of her former attorney, Ronald Prebenda. Prebenda swore that, before Nikkila left Kaufman & Payton's employ, he had told a member of Kaufman & Payton that Nikkila intended to file a complaint with the Attorney Grievance Commission. This conclusively demonstrates that Kaufman & Payton knew that she was going to report the billing practices. Considering that Alan J. Kaufman was an officer of Kaufman & Payton, the object of the complaint, and Nikkila's supervisor, I think a reasonable factfinder could infer that this information would have been passed on to Alan J. Kaufman.

I also disagree with the majority that Prebenda's affidavit is contradicted by his deposition testimony. Prebenda was deposed by Kaufman & Payton and Alan J. Kaufman over his own strong objections based on attorney-client privilege. He answered many questions by saying he had "no present recollection," and gave responses so unsatisfactory that the trial court later ordered him to be redeposed. Regardless, a careful reading of his testimony shows no direct contradiction with his affidavit.

Finally, even if Prebenda's December 18, 1989, affidavit and his March 15, 1990, deposition testimony were contradictory, I disagree with the majority that the result should be to reject the evidence most favorable to Nikkila and accept the

evidence most favorable to Kaufman & Payton and
Alan J. Kaufman. When reviewing the supporting
materials to determine whether a question of ma-
terial fact exists, courts are supposed to give the
benefit of reasonable doubt to the party opposing a
motion for summary disposition, not to the party
making the motion. See *Rizzo v Kretschmer,* 389
Mich 363, 372; 207 NW2d 316 (1973).

There is a longstanding rule, followed in *Griffith
v Brant,* 177 Mich App 583, 587-588; 442 NW2d
652 (1989), that a party, having testified to facts in
a deposition in a clear, intelligent, and unequivo-
cal manner is bound by those statements and
cannot avoid summary disposition by later swear-
ing in an affidavit that testimony at trial would be
different. See *Barlow v John Crane-Houdaille, Inc,*
191 Mich App 244, 250; 477 NW2d 133 (1991);
*Gamet v Jenks,* 38 Mich App 719, 726; 197 NW2d
160 (1972). However, in this case Prebenda is not a
party,[2] his deposition testimony was not clear and
unequivocal, and his affidavit was prepared
months before he was deposed.

I believe that by extending the rule in *Griffith* to
this case, the majority is engaging in impermissi-
ble fact finding. As already noted, both the trial
court and this Court must give the party opposing
a motion for summary disposition the benefit of
reasonable doubt, and determine whether a record
might be developed that would create an issue of
material fact. If Prebenda has testified one way,
but in an earlier affidavit swore the facts were
otherwise, I believe there is a reasonable doubt
regarding how he would testify at trial. The major-
ity fails to give Nikkila the benefit of that doubt as
is her due.

I would reverse.

---

[2] And contrary to the majority's assertion, there is nothing in the
record to indicate that, either at the time of Prebenda's affidavit or
his deposition, he was still acting as Nikkila's attorney.