*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BENJAMIN ROBINSON,

Plaintiff-Appellant,

v

WOLVERINE MUTUAL INSURANCE
COMPANY,

Defendant-Appellee.

UNPUBLISHED
March 30, 2023

No. 360092
Wayne Circuit Court
LC No. 21-003188-AV

Before: PATEL, P.J., and SWARTZLE and HOOD, JJ.

PER CURIAM.

Plaintiff, Benjamin Robinson (Robinson), appeals by leave granted[1] a circuit court appellate order affirming the district court's grant of summary disposition under MCR 2.116(C)(10) in favor of defendant, Wolverine Mutual Insurance Company (Wolverine), in this no-fault action to recover personal-protection-insurance (PIP) benefits. We reverse and remand.

## I. BACKGROUND

This case arises out of a claim for PIP benefits stemming from injuries Robinson suffered in an automobile accident in early January 2019. On January 8, 2019, Robinson was injured in an accident while driving a 2018 Dodge Durango. Ekhlas Mona owned the Durango and lived at a different address than Robinson. Wolverine insured the Durango.

In early January 2020, Robinson sued Wolverine in district court in a two-count complaint. He requested payment of PIP benefits for medical expenses under the no-fault act, MCL 500.3101 *et seq*. He also sought declarations from the court regarding the applicability of the no-fault act, the amount of benefits owed, and any reductions, setoffs, or reimbursements that Wolverine could claim. Robinson's complaint alleged that, on the day of the accident, he "own[ed] a vehicle with

---

[1] *Robinson v Wolverine Mut Ins Co*, unpublished order of the Court of Appeals, entered June 3, 2022 (Docket No. 360092).

automobile insurance with Wolverine Mutual Insurance Company." During discovery, however, Robinson answered Wolverine's interrogatories and stated, in relevant part, that as of the date of the accident, he owned two vehicles, a 2001 Dodge Caravan and a 1987 Monte Carlo, that he insured with a policy through AAA Insurance Company (AAA).

In late November 2020, Wolverine moved for summary disposition under MCR 2.116(C)(10), arguing that under the version of MCL 500.3114 in effect at the time of the accident,[2] and based on Robinson's interrogatory answer, AAA was the proper insurer for purposes of PIP benefit coverage. Wolverine also moved for sanctions, arguing that Robinson's lawsuit was frivolous because he had no reasonable basis to believe that the facts underlying his claim were true and his position was meritless.

Discovery closed on December 10, 2020. On December 14, 2020, Robinson responded to Wolverine's motion for summary disposition,[3] arguing, in part, that there was a factual dispute, regarding the proper insurer, that precluded summary disposition. To support this position, Robinson attached an amendment to his response to Wolverine's interrogatories and an affidavit. The amended response listed the same two vehicles owned by Robinson, but stated: "After further investigation, I did not have a policy of No-Fault insurance on January 8, 2019." In his affidavit, Robinson stated he "did not own a policy with AAA Insurance Company" on the date of the accident, "nor did [he] reside with anyone who owned an automobile that [sic] for which AAA Insurance Company would apply to medical bills incurred" from the accident. The amended answer to interrogatories is not dated, and the affidavit is dated December 13, 2020. Robinson also asserted in his response that his claim was not frivolous, noting that Wolverine's "sole basis" was "predicated on [Robinson] having his own insurance."

The district court granted Wolverine's dispositive motion without a hearing. In the order granting summary disposition, the Court found that Robinson "failed to respond" to Wolverine's motion and that Wolverine was "not the proper carrier."

Robinson moved for relief under MCR 2.612(C)(1)(f),[4] contesting the district court's determination that he had failed to respond to Wolverine's motion. At a hearing on the motion for

---

[2] After the accident giving rise to Robinson's claim occurred, portions of the no-fault act were amended, effective June 11, 2019, by 2019 PA 21. The amended provisions are, therefore, not before us. Accordingly, this opinion will refer to the no-fault act as it existed on January 8, 2019, the date of the accident. See *Griffin v Trumbull Ins Co*, 509 Mich 484, 498 n 4; 983 NW2d 760 (2022).

[3] Robinson's response to the motion for summary disposition was filed one business day after it was due, but Wolverine's attorney apparently indicated to Robinson's attorney that he would not object to the late filing. The district court also provided permission for the late filing by e-mail. This is relevant to the district court's order regarding summary disposition.

[4] Robinson initially moved for reconsideration of the district court's order granting summary disposition to Wolverine. He withdrew that motion and, instead, filed a motion for relief from judgment. The two motions are nearly identical and differ only in language related to the court rules applicable to the respective motion.

relief, the district court indicated that it reviewed Robinson's response to the motion for summary disposition, but still found that Wolverine did not cover Robinson. Robinson's attorney noted that, contrary to language in the district court's order related to the motion for summary disposition, he had responded to the motion. His attorney also asserted that the district court had to look at the evidence in the light most favorable to Robinson, and Robinson's affidavit demonstrated a factual dispute regarding coverage. The district court, however, stated that Robinson was "the moving party here" and he had "basically [filed] a Motion for Reconsideration." The district court stated that its decision on Wolverine's motion for summary disposition "had nothing to do with [Robinson] not responding, it was based on the merits of the motion which showed that Wolverine did not cover Benjamin Robinson." It also imposed sanctions against Robinson and his attorneys, finding that his claims were frivolous under MCR 2.114.

Robinson appealed to the circuit court, and it affirmed the district court's decision. The circuit court found that the district court was not bound to accept new statements by Robinson concerning his own insurance coverage. This, according to the circuit court, was particularly true where Robinson made the statements in response to Wolverine's motion for summary disposition and after discovery had closed. The circuit court found that Robinson was bound by his original statements, and, accordingly, no genuine dispute existed regarding coverage. The circuit court also found that the sanctions award and finding of frivolousness were within the district court's discretion.

Robinson moved for reconsideration, which the circuit court denied. Robinson then applied for leave to appeal with this Court, which this Court granted. *Robinson v Wolverine Mut Ins Co*, unpublished order of the Court of Appeals, entered June 3, 2022 (Docket No. 360092).

## II. STANDARDS OF REVIEW

This Court reviews de novo a circuit court's review of a district court's order. *Noll v Ritzer*, 317 Mich App 506, 510; 895 NW2d 192 (2016). This Court also reviews de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion under MCR 2.116(C)(10) "tests the factual sufficiency of a claim." *Id*. at 160 (citation and emphasis omitted). In considering a motion under MCR 2.116(C)(10), the trial court "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. (citation omitted). Such a motion "may only be granted when there is no genuine issue of material fact." *Id*. (citation omitted). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted).

This Court reviews de novo the proper interpretation and application of statutes and court rules. *Glasker-Davis v Auvenshire*, 333 Mich App 222, 229; 964 NW2d 809 (2020). We review the interpretation of court rules "under the same principles that govern the construction of statutes." *Dawley v Hall*, 501 Mich 166, 169; 905 NW2d 863 (2018) (quotation marks and citation omitted). They are "interpreted according to [their] plain language, giving each word and phrase its common, ordinary meaning." *Id*. (quotation marks and citation omitted).

> The primary goal when construing a statute is to ascertain and give effect to the intent of the Legislature. When determining the Legislature's intent, this Court

must first look to the statute's specific language. Judicial construction is unnecessary if the meaning of the language is clear. However, judicial construction is appropriate when reasonable minds can differ regarding the statute's meaning. Terms contained in the no-fault act are read in the light of its legislative history and in the context of the no-fault act as a whole. Further, courts should not abandon common sense when construing a statute. Given the remedial nature of the no-fault act, courts must liberally construe its provisions in favor of the persons who are its intended beneficiaries. [*Farmers Ins Exch v AAA of Mich*, 256 Mich App 691, 695; 671 NW2d 89 (2003) (quotation marks and citation omitted).]

A trial court's imposition of discovery sanctions is reviewed for an abuse of discretion, which occurs when the decision is outside the range of reasonable and principled outcomes. *Hardrick v Auto Club Ins Ass'n*, 294 Mich App 651, 659-660; 819 NW2d 28 (2011).

III. GENUINE ISSUE OF MATERIAL FACT REGARDING INSURANCE COVERAGE

Robinson first argues that the circuit court erred in affirming the district court's grant of summary disposition to Wolverine because there remain genuine issues of material fact regarding insurance coverage. We agree.

Persons injured in no-fault accidents proceed against their own insurers first, and proceed against other insurers only if they do not have no-fault coverage. *Husted v Auto-Owners Ins Co*, 459 Mich 500, 512; 591 NW2d 642 (1999). The first-priority insurer for PIP benefits is the insurer who insures a named insured of an insurance policy, that person's spouse, or a relative domiciled in the same household. See MCL 500.3114(1), as amended by 2016 PA 347. If such a policy exists, that insurer shall pay the injured person's benefits. See MCL 500.3114(1), as amended by 2016 PA 347. Otherwise, the injured person is entitled to claim PIP benefits from the insurer of the owner or registrant of the occupied vehicle. See MCL 500.3114(4), as amended by 2016 PA 347.

Here, Wolverine moved for summary disposition based on Robinson's interrogatory answer that he had auto insurance through AAA. According to Wolverine, this meant that AAA was responsible for payment of PIP benefits to Robinson. In response, Robinson argued there was a factual dispute regarding coverage. To support this argument, he attached an amended version of his interrogatory answer to indicate that, "[a]fter further investigation," he did not have insurance coverage—with AAA or otherwise—at the time of the accident. He also provided an affidavit indicating that he did not have a policy with AAA. There is no dispute that if Robinson had no-fault insurance through AAA, he should have sued AAA, and if he did not, Wolverine is the proper carrier.

The main issue on appeal, therefore, is whether the district court erroneously granted summary disposition in Wolverine's favor despite Robinson's amendment to his interrogatory answer and his affidavit. We conclude summary disposition was erroneously granted.

Under MCR 2.302(E)(1)(a)(*i*), a party that has responded to an interrogatory has a duty to supplement or correct a response "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective

information has not otherwise been made known to the other parties during the discovery process or in writing[.]" Wolverine argues that the close of discovery is a deadline, after which such corrections should not be accepted by a court. But the court rule contains no such limitation. And although a court need not consider untimely evidence, *Quinto v Cross & Peters Co*, 451 Mich 358, 366 n 5; 547 NW2d 314 (1996), MCR 2.302(E) requires a party that discovers an error in an interrogatory response to correct the response at any time during the proceedings if it discovers that a response is incorrect or incomplete. Here, Robinson amended his interrogatory answers before the district court's resolution of Wolverine's motion for summary disposition. There is no evidence that Robinson delayed amending the answers after he discovered that they were incorrect. There is also no record of the court striking Robinson's responses as untimely or striking them as a discovery sanction for failing to provide them before the close of discovery. See *Maldonado v Ford Motor Co*, 476 Mich 372, 376; 719 NW2d 809 (2006) ("[C]ourts possess the inherent authority to sanction litigants and their counsel, including the power to dismiss an action."); *Local Area Watch v Grand Rapids*, 262 Mich App 136, 147; 683 NW2d 745 (2004) ("Whether to impose discovery sanctions is entrusted to the discretion of the trial court."). See also MCR 2.302 (E)(2) (providing for sanctions for failure to supplement discovery responses); MCR 2.302(G)(4) (providing for sanctions related to signing of discovery responses). Instead, the district court stated that it considered Robinson's late response. Had it done so, it would have had to find a genuine issue of material fact related to insurance coverage.

Although Robinson moved for relief from the district court's order granting summary disposition in Wolverine's favor, he essentially asked the court to reconsider its decision on Wolverine's motion for summary disposition. See *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 204; 920 NW2d 148 (2018) (noting that this Court need not accept a party's choice of label for a motion because doing so would elevate form over substance). The district court, however, apparently relied on the form of Robinson's filing over its substance to circumvent the principle that all evidence be viewed in the light most favorable to the nonmoving party. This appears to be solely because Robinson moved for relief from the order instead of reconsideration. But it was Wolverine that moved for summary disposition and, accordingly, the evidence—including Robinson's affidavit and amendments to his interrogatory answers—had to be taken in the light most favorable to Robinson, not Wolverine. *El-Khalil*, 504 Mich at 160. In that light, Robinson's amended answer and affidavit established a genuine factual dispute regarding coverage and, as a result, the district court erred in granting Wolverine's motion for summary disposition.

Wolverine asserts that there was "not an amendment to a discovery answer" but only "a contradictory affidavit filed with the express intent to defeat" a motion for summary disposition. This is at least partially inaccurate. Both an amended answer to interrogatories and an affidavit were attached to Robinson's response.

Wolverine also cites several cases to support its contention that sworn statements that contradict prior testimony or conduct cannot create a factual dispute to avoid summary disposition. Wolverine's reliance on these cases is misplaced for three reasons. First, each case involved contradictions of clear and unequivocal deposition testimony, not interrogatory responses. See, e.g., *Casey v Auto Owners Ins Co*, 273 Mich App 388; 729 NW2d 277 (2006); *Kaufman & Payton, PC v Nikkila*, 200 Mich App 250, 256-257; 503 NW2d 728 (1993). It is well-established that a party or witness cannot create a question of material fact by contradicting their own deposition

testimony with an affidavit. See *Dykes v William Beaumont Hosp*, 246 Mich App 471, 479-482; 633 NW2d 440 (2001). See also *Gamet v Jenks*, 38 Mich App 719, 726; 197 NW2d 160 (1972) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.") (quotation marks and citation omitted).[5] Wolverine has failed to identify authority that would allow us to apply the rule prohibiting statements that contradict deposition testimony to statements that contradict prior interrogatory answers.

Second, and relatedly, such an application would conflict with the requirement in MCR 2.302(E)(1)(a)(*i*) that a party must timely supplement or correct any discovery response it learns is incomplete or incorrect. Because each of the cases on which Wolverine relies involves contradictions with depositions, not interrogatory responses, none of them address the mandate contained in MCR 2.302(E)(1)(a)(*i*).

Third, when a party makes an assertion in a "clear, intelligent, and unequivocal" manner, it is generally considered binding against the party *unless* they can explain a discrepancy or demonstrate a mistake. See *Bakeman v Citizens Ins Co of the Midwest*, ___ Mich App___, ___; ___ NW2d ___ (2022) (Docket No. 357195); slip op at 5 (holding that the trial court could not ignore plaintiff's self-conflicting testimony made in a single deposition). Regarding self-conflicting testimony, this Court has been reluctant to apply a "bright line" favoring either testimony that favors a witness or damages a witness. See *id*. at 5-6. Instead, "a party is ordinarily entitled to the benefit of testimony in support of that party, even when there are inconsistencies or contradictory statements in the testimony of [the] plaintiff or [their] witnesses . . . ." *Id*. at 6 (quotation marks and citation omitted). The rule, which Wolverine cites, regarding conflicts between depositions and affidavits, "was designed to prevent parties from manufacturing factual questions for the purpose of surviving summary disposition." *Id*. Here, looking at the totality of Robinson's statements, that does not appear to be the case. In his complaint, he asserted that he had auto insurance with Wolverine on the date of the accident. Then, in his response to Wolverine's interrogatories he said he did not have insurance with Wolverine, but he had insurance with AAA. And, in his amended answer, Robinson indicated that, after "further investigation," he did not have a no-fault policy at the time of the accident. Here, Robinson's conflicting and contradictory answers appear to be based on inadvertence or imprecision rather than guile, gamesmanship, or an attempt to thwart a procedural rule. See *id*. at 6. We also note that the discrepancy does not relate to the witness's perception or memory of facts, but rather, the existence or nonexistence of an insurance policy, something that the Wolverine could establish separate from Robinson's testimony. While Robinson's answers may have provided a basis for a discovery sanction, the court did not impose one. Without such a sanction or other indication of guile or gamesmanship, the trial court should have considered the amended answer when ruling on the motion for summary disposition. Had it done so, it would have found a question of fact.

---

[5] Although *Gamet* is not strictly binding pursuant to MCR 7.215(J)(1) because it was issued before November 1, 1990, as a published opinion, it nevertheless "has precedential effect under the rule of stare decisis" pursuant to MCR 7.215(C)(2).

This leads us to conclude that the district court erroneously granted summary disposition in Wolverine's favor. A reasonable jury could conclude that additional investigation revealed Robinson was, at the time of his initial interrogatory answer, mistaken about his insurance coverage at the time of the accident. The district court confirmed that it considered Robinson's response to the motion for summary disposition, which included Robinson's amended answer and affidavit. If this were true, then it should have considered the amended interrogatory response and affidavit. At the hearing on Robinson's motion for relief from the summary-disposition order, the district court stated: "[M]y ruling had nothing to do with you not responding, it was based on the merits of the motion which showed that Wolverine did not cover Benjamin Robinson." The district court was required to view this evidence in the light most favorable to Robinson, including the amended answer and affidavit. As stated earlier, in that light, the evidence demonstrated a factual dispute regarding whether Robinson had insurance coverage at the time of the accident. The district court, therefore, erred in finding that there was no genuine issue regarding whether Wolverine was the proper insurer. Accordingly, the district court erred in granting summary disposition to Wolverine and the circuit court erred in affirming that decision.[6]

We reverse and remand. We do not retain jurisdiction.


/s/ Sima G. Patel
/s/ Noah P. Hood

---

[6] The district court granted Wolverine's request for sanctions, and found Robinson's case was frivolous, "for the reasons stated in" Wolverine's motion. Wolverine's motion asserted that Robinson's case was frivolous because "[j]ust the slight[est] bit of investigative work would have revealed that [Robinson] had his own no-fault policy." This is essentially the same basis upon which the district court granted summary disposition—that Wolverine was not the proper insurer because Robinson supposedly had a policy with AAA. This conclusion was erroneous. There was a factual dispute regarding coverage and, as a result, the imposition of sanctions, like the grant of summary disposition, was improper.