*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

KERMIT LAMARK COPELAND,

　　　　　Plaintiff-Appellant,

v

ALLSTATE INSURANCE COMPANY,

　　　　　Defendant-Appellee.

FOR PUBLICATION
March 16, 2026
10:38 AM

No.　373748
Wayne Circuit Court
LC No.　23-004967-NF

Before:　MALDONADO, P.J., and M. J. KELLY and TREBILCOCK, JJ.

MALDONADO, P.J.

In this no-fault action to obtain personal injury protection (PIP) benefits from defendant, Allstate Insurance Company (Allstate), the Michigan Automobile Insurance Placement Facility's (MAIPF) servicing insurer, plaintiff, Kermit Lamark Copeland, appeals by right the trial court's order granting defendant summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact). Plaintiff argues on appeal that the trial court erred when it resolved the factual question of plaintiff's domicile and concluded that defendant was not the highest priority insurer responsible for paying plaintiff PIP benefits. We agree with plaintiff and reverse the trial court's order of dismissal.

## I. BACKGROUND

Plaintiff is currently homeless and estimates that he has been for 10 to 15 years. Approximately 17 years ago, plaintiff lived with his sister, L. Caver, and her husband, D. Caver, for about three months. Plaintiff continues to use their address (the Judd address) for mail and for his Michigan identification card "because it is the only stable and consistent address in [his] immediate family," and he trusts his sister. He does not live in the home or keep personal belongings there. Plaintiff did not recall the last address that he resided at before he was homeless at his deposition but later claimed in an affidavit that he lived in several places after his short stay with his sister. Among the places he lived, plaintiff asserted that he lived with his mother for several years at a specified address in Detroit, Michigan (the Seymour address).

In February 2021, plaintiff was a passenger in a vehicle involved in a hit-and-run collision. Plaintiff did not have automobile insurance, and neither did the driver. The police recorded the

Judd address for plaintiff in their collision report. While plaintiff was recovering from his injuries, he primarily lived at the Seymour address, although his medical records include the Judd address.

Plaintiff filed an application for PIP benefits through the Michigan Assigned Claims Plan (MACP) using the Judd address. In an amended application, plaintiff added his sister, L. Caver, as an individual living in his home at the time of the accident. He reported no person in the household owned a motor vehicle, and there was no automobile insurance in the household. However, the Cavers had several vehicles insured by Auto-Owners Insurance on the date of plaintiff's accident. Their policy lists D. Caver and L. Caver as covered drivers but does not identify plaintiff as a member of the household.

Plaintiff filed this suit against MAIPF, MACP, and the "unnamed assignee of MAIPF/MACP" in April 2023 to obtain PIP benefits under Michigan's no-fault act, MCL 500.3101 *et seq.*, after the original defendants failed to assign plaintiff's claim to a servicing insurer as required by statute.[1] In May 2023, the MAIPF assigned Allstate to service plaintiff's claim, and Allstate was substituted as defendant in July 2023.

In April 2024, defendant moved for summary disposition under MCR 2.116(C)(10), alleging that plaintiff was domiciled with L. Caver on the date of the accident because he failed to establish a new domicile after leaving the Judd address. As a result, his sister's insurer, Auto-Owners, was identifiable, applicable, and higher in priority than defendant to pay plaintiff's no-fault benefits. In response, plaintiff denied that he was domiciled at the Judd address at the time of the accident, so the Auto-Owners policy was inapplicable. Plaintiff noted that defendant had not introduced any evidence that plaintiff was *ever* domiciled at the Judd address. One week before the motion hearing, plaintiff filed an affidavit listing several places that he lived after his brief stay with his sister but before becoming homeless. Defendant contended these were merely residences, distinct from an individual's domicile, and plaintiff's affidavit could not create a genuine issue of fact precluding summary disposition because it contradicted his deposition testimony. Plaintiff asserted that the affidavit added detail to previous testimony and did not contradict it.

At the hearing, the trial court asked plaintiff to provide an alternate domicile that could be analyzed against the Judd address, but plaintiff argued that the critical fact is that plaintiff's domicile is *not* his sister's house. The trial court found this narrow framing of the issue unconvincing, noting: "There has to be a domicile."

The trial court analyzed plaintiff's alleged domicile under the *Workman* and *Dairyland* framework. *Workman v Detroit Auto Inter-Ins Exchange*, 404 Mich 477; 274 NW2d 373 (1979); *Dairyland Ins Co v Auto Owners Ins Co*, 123 Mich App 675; 333 NW2d 322 (1983). The court determined that plaintiff's relationship with his sibling, the lack of another place of lodging, and his use of the Judd address for mail and on his Michigan identification card supported the conclusion that plaintiff was domiciled at the Judd address. The trial court noted, however, that there was insufficient information in the affidavit to compare the *Workman* and *Dairyland* factors to any other address. The Judd address was the only identifiable domicile, so the trial court felt it

---

[1] Plaintiff refers to MCL 500.3171, MCL 500.3172, MCL 500.3173, MCL 500.3174, and MCL 500.3175 in his complaint.

"ha[d] to deem that to be his domicile," because it could not conclude that he had no domicile at all under *Grange Ins Co of Mich v Lawrence*, 494 Mich 475; 835 NW2d 363 (2013). Consequently, the trial court found there was no question of fact remaining on the issue of plaintiff's domicile and granted summary disposition to defendant.

This appeal followed.

## II. DISCUSSION

The trial court erred when it concluded that plaintiff was domiciled at the Judd address on the relevant date and granted defendant's motion for summary disposition under MCR 2.116(C)(10). The affidavit, which supplements rather than contradicts plaintiff's deposition testimony, raises a genuine issue of material fact regarding plaintiff's domicile, which should be determined by a jury. Accordingly, we reverse and remand to the trial court for further consideration.

A trial court's decision on a motion for summary disposition is reviewed de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion made under MCR 2.116(C)(10) "tests the factual sufficiency of a claim" and "may only be granted when there is no genuine issue of material fact." *Id*. at 160 (emphasis omitted). If "the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact," summary disposition may be granted under MCR 2.116(C)(10). *Barnes v 21st Century Premier Ins Co*, 334 Mich App 531, 540; 965 NW2d 121 (2020), quoting *Pioneer State Mut Ins for Publ'n Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Barnes*, 334 Mich App at 540, quoting *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "A domicile determination is generally a question of fact; however, where the underlying material facts are not in dispute, the determination of domicile is a question of law for the circuit court." *Grange*, 494 Mich at 490.

Under Michigan's no-fault act, MCL 500.3101 *et seq.*, "MCL 500.3114(1) generally provides that a no-fault policy 'applies to accidental bodily injury to the person named in the policy, the person's spouse, *and a relative of either domiciled in the same household*, if the injury arises from a motor vehicle accident.' " *Barnes*, 334 Mich App at 534. "[T]he no-fault act does not define the term 'domiciled,' " but Michigan courts have historically defined the term as " 'the place where a person has his true, fixed, permanent home, and principal establishment, and to which, whenever he is absent, he has the intention of returning.' " *Grange*, 494 Mich App at 493, quoting *In re High*, 2 Doug 515, 523 (Mich, 1847). In general, domicile involves residence and intent to remain in a given place. *Grange*, 494 Mich at 495. It is well-settled "that every person has a domicile, and that a person may have one—and *only* one—domicile." *Id*. at 494. Consequently, an individual's domicile in a place continues until they acquire another, and by doing so an individual terminates their preceding domicile. *Id*.

Michigan courts use the *Workman* and *Dairyland* multifactor frameworks to resolve questions of fact regarding a person's domicile. *Grange*, 494 Mich at 497 n 41. The *Workman* factors to be considered are:

(1) the subjective or declared intent of the person of remaining, either permanently or for an indefinite or unlimited length of time, in the place he contends is his "domicile" or "household"; (2) the formality or informality of the relationship between the person and the members of the household; (3) whether the place where the person lives is in the same house, within the same curtilage or upon the same premises; (4) the existence of another place of lodging by the person alleging "residence" or "domicile" in the household. . . . [*Id*. at 497, quoting *Workman*, 404 Mich at 496-497.]

The factors elucidated in *Dairyland*, 123 Mich App at 682, are more closely associated with young people establishing domiciles outside of their parents' homes, but may still be relevant considerations in other contexts:

Other relevant indicia of domicile include such factors as whether the claimant continues to use his parents' home as his mailing address, whether he maintains some possessions with his parents, whether he uses his parents' address on his driver's license or other documents, whether a room is maintained for the claimant at the parents' home, and whether the claimant is dependent upon the parents for support.

See also, *Cervantes v Farm Bureau Gen Ins Co of Mich*, 272 Mich App 410, 415; 726 NW2d 73 (2006), citing *Williams v State Farm Mutual Auto Ins Co*, 202 Mich App 491, 494-495; 509 NW2d 821 (1993).

Turning to the instant case, the first *Workman* factor is "the subjective or declared intent of the person of remaining, either permanently or for an indefinite or unlimited length of time," in the place contended to be his domicile. 404 Mich at 496. Plaintiff never expressed an intent to remain at his sister's home. Rather, he indicated he had "no intention of living there." Plaintiff testified he used her address solely to receive mail and briefly stayed in her home 10 to 15 years ago. He maintained he had been homeless for about the same amount of time and was homeless at the time of the accident. L. Caver recalled that plaintiff "has not lived in [her] house in over 17 years; and at that time, he only lived in [her] house for about three months." Similarly, D. Caver stated: "I think he lived with us back when—before my son was born. That was 17 years ago. He lived with us just before my son was born." In the next 17 years, plaintiff did not return to live at the Judd address, and neither witness mentioned plaintiff asking to return. Plaintiff's short stay and the considerable length of time he has been transient suggest he never intended to remain at the Judd address and reflects his stated intent *not* to return. This factor weighs against a finding plaintiff is domiciled at the Judd address.

Second, under *Workman*, courts must consider "the formality or informality of the relationship between the person and the members of the household." *Id*. Plaintiff's relationship with the Cavers is informal in that they are family, and there was no mention of a lease or agreement dictating the terms of their living arrangement 17 years ago. L. Caver had not seen plaintiff in over a year and believed him to be incarcerated, suggesting that she and plaintiff are not close. She saw him at church at some point after his accident, but it is unclear when plaintiff was last present at the Judd address. This informal and distant relationship weighs slightly against

a finding plaintiff is domiciled with his sister, although the trial court came to the opposite conclusion.

The third *Workman* factor evaluates "whether the place where the person lives is in the same house, within the same curtilage or upon the same premises." *Id*. It is undisputed plaintiff does not reside in his sister's home and has not for more than a decade. This factor favors a finding that plaintiff was not domiciled with his sister.

Fourth, courts look to "the existence of another place of lodging by the person" allegedly domiciled in the household. *Id*. at 497. At his deposition, plaintiff could not recall the last address he lived at before he became homeless, but later submitted an affidavit listing other residences after his brief stay with his sister. The affidavit indicates that plaintiff lived with his mother at the Seymour address for several years and lived with others at multiple unspecified addresses after leaving the Judd address but before becoming homeless. Plaintiff maintained that he was homeless at the time of the accident, so on the relevant date he did not have any place of lodging, let alone "another" one. *Id*. Viewing the evidence in the light most favorable to plaintiff, the affidavit suggests an alternative, subsequent domicile may have extinguished his previous one at the Judd address, assuming plaintiff was ever domiciled there in the first place. *Barnes*, 334 Mich App at 540. Given the circumstances, this factor is neutral.

The first *Dairyland* factor is whether the claimant uses the alleged domicile address as his mailing address. 123 Mich App at 682. In this case, there is no question that plaintiff used the Judd address for mail because he lacked any other consistent address. Accordingly, this factor suggests plaintiff was domiciled at the Judd address at the time of the accident.

Next, *Dairyland* instructs courts to consider "whether [the claimant] maintains some possessions" at the home alleged to be his domicile. *Id*. Plaintiff testified that he does not keep any personal items at the Judd address. L. Caver and D. Caver confirmed in their depositions that plaintiff does not have any possessions at their home. This factor, then, weighs against a finding plaintiff was domiciled at his sister's home.

The third *Dairyland* factor asks whether the person uses the address "on his driver's license or other documents." *Id*. Plaintiff used the Judd address on his state identification card and his medical documents. This is the address recorded in the police report and on plaintiff's applications for benefits. Plaintiff's use of the Judd address weighs in favor of a finding he is domiciled at that location.

Fourth, *Dairyland* asks "whether a room is maintained for the claimant" at the home. *Id*. On the date of plaintiff's accident, only L. Caver, D. Caver, and their children occupied the home. D. Caver testified that plaintiff did not stay with them, even occasionally, suggesting that there was no reason to maintain a bedroom for plaintiff. Although neither witness was expressly asked about this factor, the testimony that plaintiff had no belongings at the home and never stayed with them suggests that a room was not kept available for him. As such, this factor indicates that he was not domiciled at the Judd address.

Finally, the fifth *Dairyland* factor asks if the claimant is dependent upon other residents of the household for support. *Id*. There is no mention in the record of plaintiff receiving assistance

-5-

or support of any kind from the Cavers, indicating that plaintiff is not domiciled with them at the Judd address.

In sum, analysis under the *Workman* and *Dairyland* frameworks does not weigh in favor of finding that plaintiff is domiciled with his sister at the Judd address. Two *Workman* factors, intent and residence on the same premises, clearly weigh against a finding plaintiff is domiciled at the Judd address, and the other two *Workman* factors, informality of relationship and existence of another place of lodging, do not militate strongly in favor of either conclusion. The only *Dairyland* factors favoring defendant's position relate to plaintiff's use of the address for mail, his identification, and other important documents. At best, four of nine factors suggest plaintiff was domiciled with his sister, but with two *Workman* factors being ambiguous, the total is perhaps closer to only two of nine factors. Accordingly, a conclusion that plaintiff was domiciled at the Judd address is not well-supported by the evidence and thus the trial court erred in concluding plaintiff was domiciled at the Judd address given the lack of an alternative.

Defendant contends plaintiff's "contradictory affidavit" cannot create a genuine issue of material fact precluding summary disposition. Defendant cites several cases to support its position "that an affidavit cannot contain facts or testimony contrary to the person[']s sworn deposition testimony in order to create a question of fact in a summary disposition motion." See, e.g., *Kaufman & Payton, PC v Nikkila*, 200 Mich App 250; 503 NW2d 728 (1993); *Gamet v Jenks*, 38 Mich App 719; 197 NW2d 160 (1972). In both cases, previous testimony directly contradicted later-filed affidavits. But here, plaintiff argues: "The affidavit is not contrary to his prior testimony. What he testified to was he couldn't remember the other places he lived at [] that point—at the point in time when they took his deposition, and he clarified that subsequently in the affidavit." The Cavers testified plaintiff lived with them over 17 years ago. Plaintiff estimated at his deposition he has been homeless for about 10 to 15 years. The affidavit mentions plaintiff lived with his mother at the Seymour address for several years between living at the Judd address and becoming homeless. Plaintiff then lists three other places he lived, for "over a year, maybe longer," "a few years," and "for approximately 1 year." He then estimated, consistent with his deposition testimony, that he has been homeless for approximately 10 years. It is entirely possible that plaintiff has lived in four different places for "a year" or "several years" *and* been homeless for 10 of the last 17 years. Consequently, the affidavit does not directly contradict plaintiff's testimony; rather, it adds detail to plaintiff's previous testimony.

Viewed in the light most favorable to plaintiff, the affidavit presents alternative resolutions to the factual question of plaintiff's domicile, and summary disposition was inappropriate. If plaintiff was domiciled at the Judd address for a mere three months 17 years ago, the move to the Seymour address may have extinguished that domicile and established a new one. Alternatively, he may have never been domiciled at the Judd address given his stated intent never to remain there, and the Seymour address may have been his last specified domicile before becoming homeless. In general, domicile determinations are questions of fact for the jury, unless the underlying material facts are not in dispute. *Grange*, 494 Mich at 490. The affidavit supplements plaintiff's testimony and creates a genuine issue of material fact regarding plaintiff's domicile that should be determined by a jury. Consequently, when viewing the facts in the light most favorable to plaintiff, we conclude that the trial court erred when it found plaintiff was domiciled at the Judd address and granted summary disposition under MCR 2.116(C)(10) in favor of defendant.

We reverse and remand for further consideration.  We do not retain jurisdiction.

/s/ Allie Greenleaf Maldonado
/s/ Michael J. Kelly
/s/ Christopher M. Trebilcock